**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

-------------------------------------------------------------------x

UNITED STATES OF AMERICA,

                        Plaintiff,

             v.                             Case No. 8:22-cr-00440-PX

NADER POURHASSAN, and
KAZEM KAZEMPOUR,

                     Defendants.

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT POURHASSAN'S MOTION TO SEVER HIS TRIAL FROM THAT OF HIS CO-DEFENDANT

Defendant Nader Z. Pourhassan ("Dr. Pourhassan"), by and through undersigned counsel, moves this Court pursuant to Federal Rule of Criminal Procedure 14(a), and the Fifth and Sixth Amendments of the United States Constitution, for relief from the prejudicial joinder of his trial with his co-defendant, Kazem Kazempour ("Mr. Kazempour").

## BACKGROUND

On December 15, 2022, a grand jury in the District of Maryland returned an Indictment against Dr. Pourhassan and Mr. Kazempour.  *See* ECF No. 1.  The Indictment alleges that Dr. Pourhassan, as President and Chief Executive Officer of CytoDyn, Inc. ("CytoDyn"), a publicly-traded biotechnology company, made material misrepresentations as to the efficacy of CytoDyn's primary product, leronlimab, and the timeline for submission of a Biologics License Application ("BLA") with the U.S. Food and Drug Administration ("FDA") for leronlimab.  Mr. Kazempour was the Chief Executive Officer of Amarex Clinical Research LLC ("Amarex"), which was CytoDyn's Contract Research Organization ("CRO") and was responsible for managing and

assessing CytoDyn's clinical trials for leronlimab, submitting the BLA, and communicating with the FDA in the role of CytoDyn's regulatory agent. While the Indictment includes 14 counts,[1] Dr. Pourhassan and Mr. Kazempour share only four counts in the Indictment.

## STANDARD OF REVIEW

Pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, a court has discretion to order separate trials of co-defendants. Fed. R. Crim. P. 14(a). Severance is appropriate when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see also United States v. Lighty*, 616 F.3d 321, 348 (4th Cir. 2010). While joinder is designed to promote judicial economy and efficiency, a court abuses its discretion when it "secure[s] greater speed, economy and convenience . . . at the price of fundamental principles of constitutional liberty." *Burton v. United States*, 391 U.S. 123, 134-35 (1968).

Courts have discretion to permit severance because of antagonistic defenses when a movant shows that the conflict is so prejudicial that the differences are irreconcilable, and that a jury will unjustifiably infer that this conflict alone demonstrates that both defendants are guilty. *United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978) (citing *United States v. Robinson*, 432 F.2d 1348, 1351 (D.C. Cir. 1970)). Notwithstanding such discretion, courts must grant severance to avoid outcomes that "deprive[] the defendant of a fair trial and result[] in a miscarriage of justice." *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992) (quoting *Becker*, 585 F.2d at 706). *See*

---

[1]     The Indictment charges Dr. Pourhassan in 11 of the 14 counts: (i) conspiracy to commit offenses against the United States (18 U.S.C. § 371) (Count 1); (ii) four counts of securities fraud (15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. 240.10b-5) (Counts 2, 3, 4 and 9); (iii) three counts of wire fraud (18 U.S.C. § 1343) (Counts 5, 6 and 10); and (iv) three counts of insider trading (15 U.S.C. § 78j(b) & 78ff and 17 C.F.R. 240.10b-5) (Counts 11, 12 and 13).

*also United States v. Spitler*, 800 F.2d 1267, 1273 (4th Cir. 1986) (citing *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

**ARGUMENT**

I.   **DR. POURHASSAN'S TRIAL SHOULD BE SEVERED FROM HIS CO-DEFENDANT'S TRIAL.**

    A.   **The Defenses of Dr. Pourhassan and His Co-Defendant Are So Irreconcilably Antagonistic, that a Jury Could Not Make Reliable Judgments About Guilt or Innocence at Trial.**

Dr. Pourhassan will assert defenses at trial that are antagonistic to those of Mr. Kazempour, which will be unduly prejudicial to both co-defendants if their cases are not severed. On the basis of conflicting defenses, the Fourth Circuit requires severance where "the conflict is so prejudicial that the differences are irreconcilable" and where "the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Spitler*, 800 F.2d at 1272 (quoting *Becker*, 585 F.2d at 707). Severance is appropriate in this case to avoid undue prejudice and to protect Dr. Pourhassan's constitutional right to a fair trial. *United States v. Duke*, No. 3:16-CR-00221-MOC-DCK, 2018 WL 5266852, at *1 (W.D.N.C. Oct. 23, 2018) ("Prejudice exists where joinder is likely to infringe on defendant's Sixth Amendment right to a fair trial.").

Consistent with the discovery the DOJ has produced to date, Dr. Pourhassan and Mr. Kazempour's defenses will be irreconcilably antagonistic at trial. With respect to any criminal conduct, Dr. Pourhassan, who has a degree in mechanical engineering and not life sciences, will present a defense that is diametrically opposed to Mr. Kazempour. Dr. Pourhassan reasonably relied on the relevant and specialized expertise of Mr. Kazempour, who was a former FDA Clinical Reviewer, in connection with communications with and submissions to the FDA. Dr. Pourhassan reasonably believed that Mr. Kazempour, on behalf of Amarex in its role as CytoDyn's regulatory agent, submitted a complete BLA to the FDA, truthfully and timely explained the FDA's

3

communications concerning the BLA submission and COVID-19 clinical trials, and accurately presented the biostatistical results of the clinical trials of leronlimab.  *See* Exhibit 1 (Amarex presentation to the DOJ explaining Amarex's compliance program is well designed) (DOJ-PROD-0003433576) ("Amarex strives to provide timely project deliverables and excellence in all of its services, while maintaining strict adherence to the regulations and quality standards of the clinical trial industry . . . .").  However, Mr. Kazempour failed in his trusted role as CytoDyn's regulatory agent.

Mr. Kazempour signed the cover letter accompanying the BLA submission stating that it was missing clinical datasets, but then falsely represented to Dr. Pourhassan that the BLA submission was complete.  *See* Exhibit 2 (April 27, 2020 Cover letter to FDA, signed by Mr. Kazempour, acknowledging that the BLA was missing datasets) (DOJ-PROD-0002697317 – DOJ-PROD-0002697319); *see also* Exhibit 3 (April 27, 2020 Email from Amarex to Dr. Pourhassan, with Mr. Kazempour in copy, congratulating Dr. Pourhassan on the milestone and stating that the clinical datasets and CMC portion of the BLA were submitted) (DOJ-PROD-0003122480).  As a result, CytoDyn's press release to the investing public relayed that the BLA was complete.

In fact, Dr. Kush Dhody, Vice President of Clinical Operations at Amarex, explicitly signed off on the accuracy of CytoDyn's April 27, 2020 BLA press release without making any amendments to the portion of the press release stating that "the Company has submitted the clinical, and the CMC (chemistry, manufacturing and controls) portions of its Biologics License Application."  *See* Exhibit 4 (Kush Dhody's revisions to the April 27, 2020 press release) (DOJ-PROD-0002367695 – DOJ-PROD-0002367698); *see also* Exhibit 5 (April 26, 2020 Email from Kush Dhody to Dr. Pourhassan signing off on CytoDyn's April 27, 2020 press release) (DOJ-PROD-0002367693 – DOJ-PROD-0002367694).  Moreover, Amarex released its own press

release following the BLA submission to the FDA, which stated that the BLA was complete. *See* Exhibit 6 (Amarex's April 28, 2020 press release stating that "[t]he application was finalized with the submission of the clinical and CMC (chemistry, manufacturing and controls) sections of the BLA") (DOJ-PROD-0002703863 – DOJ-PROD-0002703866).

Despite Dr. Pourhassan's good faith belief that Amarex had properly completed the BLA and that CytoDyn was on the right track with the FDA, Mr. Kazempour has repeatedly argued and will continue to argue that all he did was submit, at the request of Dr. Pourhassan, a partially completed BLA with a cover letter to the FDA stating that the BLA was still missing information. *See* Def. Kazem Kazempour's Mem. in Supp. of his Mot. to Dismiss ("Kazempour MTD"), *SEC v. Kazempour,* No. 8:22-cv-3284-PX (D. Md. Mar. 6, 2023), ECF No. 29-1. In a 2021 Declaration filed in a civil action by CytoDyn against Amarex, Mr. Kazempour falsely claimed that Amarex submitted an incomplete BLA to the FDA as a result of Dr. Pourhassan's affirmative instruction to file the BLA regardless of missing portions. *See* Decl. of Kazem Kazempour ¶¶ 21-24, *CytoDyn, Inc. v. Amarex Clinical Rsch., LLC*, No. 8:21-cv-02533-PJM ("*CytoDyn*") (D. Md. Oct. 26, 2021), ECF. No. 27-1. Mr. Kazempour, again, attempted to shift full responsibility to Dr. Pourhassan in the SEC's parallel action. *See* Kazempour MTD, at 14 (Mr. Kazempour "was a Company outsider who bore no responsibility for CytoDyn's press releases"). No doubt, Mr. Kazempour will reassert that Dr. Pourhassan acted unilaterally and that neither he nor Amarex had any participation in the alleged false and misleading press releases that followed the BLA submission to the FDA.

Contrary to Mr. Kazempour's version of events, and as discussed above, the evidence will show that Amarex signed off on CytoDyn press releases, including the April 27, 2020 press release announcing that the BLA submission was complete, and provided its approval that the information contained within was accurate. *See* Exhibit 5. Moreover, Dr. Pourhassan relied on Amarex and

Mr. Kazempour to maintain their duty to the FDA, and to CytoDyn as CytoDyn's CRO, to ensure that all information was reported accurately, as represented within CytoDyn's August 14, 2020 SEC 10-K filing. *See* Exhibit 1 ("Amarex . . . maintain[s] strict adherence to the regulations and quality standards of the clinical trial industry . . . . This is made possible by having open and honest communications with Sponsors . . . .").

Dr. Pourhassan and Mr. Kazempour's defenses are far from mere finger-pointing; the defenses are diametrically opposed. If tried together, a jury would be presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or a jury would prejudicially infer that this conflict alone demonstrates that both defendants are guilty. *United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002); *see also Spitler*, 800 F.2d at 1271; *see also Zafiro*, 506 U.S. at 539 (instructing district courts to only grant severances where "there is a serious risk that a joint trial would compromise a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence"). For example, a jury could not believe or reconcile Dr. Pourhassan's defense that he relied on Mr. Kazempour's expertise and that Amarex independently participated in the preparation and approval of press releases while also believing Mr. Kazempour's defense that Amarex caved to alleged pressure from Dr. Pourhassan.

A jury likely could not believe either core defense by Dr. Pourhassan or Mr. Kazempour and find them both innocent. In the Fourth Circuit, courts have rejected severance motions where the facts are much different than those here. For example, in the unpublished decision of *United States v. Stencil*, 859 F. App'x 654, 658 (4th Cir. 2021), the Fourth Circuit found that severance was not required where a jury could believe one co-defendant's defense and find that "everybody walks." *Stencil* is a case about the helpless leading the clueless, not – as is the case here – about a leading industry expert steering a client through a complex FDA approval process. There, a naïve

businessman partnered with his experienced co-defendant to raise capital for his new company. *Id.* at 656.  The government alleged that both defendants conspired to commit wire fraud and used false and misleading statements to induce victims to invest in the company.  *Id.* at 655–56.  The core of both of their defenses was first, that the company was a legitimate business and, in the alternative, that if there was a fraudulent scheme, they were both unknowing participants deceived by the other.  *Id.* at 657–58.  Here, by contrast, Dr. Pourhassan and Mr. Kazempour will each argue that: (a) only the other engaged in the relevant conduct; and (b) that other defendant's conduct exculpates either Dr. Pourhassan or Mr. Kazempour (depending on who is making the argument). Unlike in *Stencil,* these defenses are simply not capable of being reconciled.

*United States v. Abrahams* also supports severance here.  There, a federal court in Massachusetts severed a lead defendant from his alleged co-conspirators, in part, because "in an attempt to dispute the Government's allegations that their participation was knowing and intelligent, the other defendants are likely to offer evidence tending to show that they acted in good faith, relying on [the lead defendant's] registration with the Commodity Futures Trading Commission and his generally solid reputation in the commodities business, and that they had no knowledge of [his] true identity or prior criminal background during their tenure at Lloyd, Carr." *United States v. Abrahams*, 466 F. Supp. 552, 555 (D. Mass. 1978).  Here, just like in *Abrahams*, Dr. Pourhassan will offer evidence that he acted in good faith, relied on Mr. Kazempour's solid reputation and expertise with a U.S. federal agency – the FDA, and will argue that he had no knowledge of Mr. Kazempour's conduct.

Other cases support severance too.  For example, in *United States v. Romanello*, the Fifth Circuit reversed a district court's denial of severance after finding that the "core of" one defendant's defense "directly implicates the co-defendant."  *United States v. Romanello*, 726 F.2d

173, 179 (5th Cir. 1984); *see also United States v. Allmendinger*, No. 3:10CR248-01, 2011 WL 841514, at *3, 4 (E.D. Va. Mar. 7, 2011) (granting severance where it would be too hard for a jury to both "understand and assess the complex evidence" while also having to "sort out the truth of the internecine warfare portended by the [government's indictment] and the Defendants' counsel").

As discussed above, these cases involve precisely the same prejudice – the core of Dr. Pourhassan's defense is to implicate Mr. Kazempour, and trial will amount to warfare between Dr. Pourhassan and Mr. Kazempour. This is not hypothetical. Indeed, this warfare has already played out in a related civil case between CytoDyn and Amarex, and in the parallel SEC case. In 2021, CytoDyn sought a preliminary injunction to compel Amarex to provide full access to CytoDyn's clinical trial data after Amarex threatened to block CytoDyn's access. *See CytoDyn*, ECF Nos. 1 & 6. In support of the preliminary injunction, Dr. Pourhassan submitted a declaration where he discussed, in part, Amarex's failures as the CRO with respect to the BLA. *See CytoDyn*, ECF No. 6-2, ¶ 27. Mr. Kazempour, in response, combatted Dr. Pourhassan's claims, declaring that it was in fact, Dr. Pourhassan who "directed Amarex to file the BLA prematurely." *See CytoDyn,* ECF No. 27-1, ¶ 22. In that civil matter, the U.S. District Court for the District of Maryland found in favor of CytoDyn and granted the preliminary injunction permitting an audit of Amarex's work for CytoDyn and ordering Amarex to provide CytoDyn with full access to its clinical trial data. *See CytoDyn*, ECF Nos. 35, 42 & 45.

As discussed above, this warfare is also being waged in the SEC proceeding that the SEC filed in parallel to this case. There, Mr. Kazempour argued that "he filed a truthful and accurate BLA" and that Dr. Pourhassan's unilateral actions leading to the publication of the allegedly false and misleading press release "had absolutely nothing to do with Mr. Kazempour and [it] did not

convert Mr. Kazempour's lawful act into an intentional scheme to defraud investors." *See* Kazempour MTD at 3-4. As the evidence cited above in this case will show, Dr. Pourhassan had no knowledge that the BLA was incomplete as relevant to the Indictment, nor did he have knowledge that the FDA's Refusal to File letter signified more of an uphill battle than Amarex explained. Yet, Mr. Kazempour knew this information, withheld it from Dr. Pourhassan, falsely represented the opposite to Dr. Pourhassan, and caused Dr. Pourhassan to unknowingly act. Unlike in *Stencil,* only one defendant, Dr. Pourhassan, can be found to have lacked the requisite intent needed to support the government's charges.

Accordingly, to ensure that Dr. Pourhassan's constitutional right to a fair trial is protected, this Honorable Court must sever Dr. Pourhassan's case from that of his co-defendant, Mr. Kazempour.

**B.    Trying Both Dr. Pourhassan and His Co-Defendant Together Will Turn Each Into a Second Prosecutor Against the Other.**

Not only would Dr. Pourhassan be acting in his own self-defense against both Mr. Kazempour and the government, he would also have to unwillingly take on the role of a "second prosecutor." In similar cases involving mutually antagonistic defenses, courts have recognized that joint trials may prompt a defendant to shift responsibility onto their co-defendant. *United States v. Andrews*, No. 1:12CR100, 2012 WL 6230450, at *5 (N.D. W. Va. Nov. 26, 2013) (holding that joint trials create an incentive for defendants to shift culpability onto their co-defendant during the guilt stage of a trial to soften punishment during the sentencing phase if convicted).

This second prosecutor dynamic is especially problematic "because it may operate to reduce the burden on the prosecutor" and "turn[] each codefendant into the other's most forceful adversary." *Zafiro,* 506 U.S. at 544 (J. Stevens concurring opinion); *see also United States v.*

*Odom,* 888 F.2d 1014, 1018 (4th Cir. 1989) ("The taking of an adversarial stance on the part of a co-defendant's counsel may generate trial conditions so prejudicial to the defendant under multiple attack as to deny him a fair trial." (quoting *United States v. DeVeau,* 734 F.2d 1023, 1027 (5th Cir. 1984))).  Here, as explained above, Mr. Kazempour will argue that he followed Dr. Pourhassan's instructions to submit the BLA, even if the BLA was incomplete.  In contrast, Dr. Pourhassan will argue the exact opposite: that he reasonably relied on Amarex and Mr. Kazempour's expertise to complete and submit the BLA to the FDA, and sought the approval of the Amarex regulatory team concerning press release drafts.  Dr. Pourhassan will vigorously dispute Mr. Kazempour's defense, and if Mr. Kazempour were to testify, Dr. Pourhassan will have no choice but to directly challenge the veracity of Mr. Kazempour's testimony.

The Fourth Circuit has recognized that in conspiracy cases, a trial judge may be forced to choose between either "curtailing [a defendant's] defense," which could create prejudice for one defendant, or permitting a hostile dynamic between co-defendants as they contradict and attack the other's defense narrative.  *See Odom*, 888 F.2d at 1018.  Ultimately, the burden to prove a defendant's guilt beyond a reasonable doubt lies solely with the prosecutor.  *Zafiro,* 506 U.S. at 544.  The government should not be permitted to circumvent that burden with defense counsel for Mr. Kazempour acting as a "second prosecutor" to convict Dr. Pourhassan and counsel for Dr. Pourhassan acting as a "second prosecutor" to convict Mr. Kazempour.  *Id.* (J. Stevens concurring opinion) (opining that joinder "may introduce what is in effect a second prosecutor into a case," or invite jurors to convict a defendant who appears "more guilty" regardless of if the state has met its burden of proof).  Consequently, the Court should sever Dr. Pourhassan's case from Mr. Kazempour for this reason as well.

**C.      Severing the Trials of Only Two Defendants Will Not Be Detrimental to
Judicial Economy and Will Also Avoid Spill-Over Prejudice to Dr.
Pourhassan.**

Severance of Dr. Pourhassan and Mr. Kazempour's cases would not harm judicial economy
or cause extensive costs to the court.  When evaluating a motion for severance, the court must
weigh potential prejudice against judicial efficiency.  *United States v. Dodt*, No. 3:15-CR-00213-
MOC-DSC, 2019 WL 452772, at *1 (W.D.N.C. Feb. 5, 2019).  When the risk of prejudice is too
great, as it is here, courts should permit the severance of two defendants.  *United States v. Singer*,
No. CRIM. 9:05-CR-00928, 2009 WL 5194991, at *2 (D.S.C. Dec. 22, 2009) ("The risk of
prejudice is too great in this case—especially when considered against the low cost to all involved
of severing this particular defendant."); *see also United States v. Johnson*, 478 F.2d 1129 (5th Cir.
1973); *Schaffer v. United States*, 221 F.2d 17 (5th Cir. 1955).  Here, proceeding with two separate
trials for Dr. Pourhassan and Mr. Kazempour would not be too time consuming – especially
considering the high risk of prejudice that they face.

The purpose of considering judicial economy is to conserve government resources and
avoid "needlessly duplicative trials involving substantially similar proof."  *United States v.
Carrillo-Ruvalcaba*, No. 5:19-cr-00008, 2020 WL 428125, at *2 (W.D. Va. Jan. 27, 2020).  While
the government may plan to use evidence applicable to the four shared counts between Dr.
Pourhassan and Mr. Kazempour, their separate counts will certainly require tailored evidence.  Dr.
Pourhassan has seven separate individual counts that must be tried—more than twice as many as
Mr. Kazempour's three individual counts.

Mr. Kazempour is also separately charged with making materially false statements to
federal agents.  *See* Indictment at 24, 40.  This count concerns an interview Mr. Kazempour had
with federal law enforcement agents where he allegedly misrepresented how many shares of
CytoDyn stock he owned.  *Id.*  The events and circumstances arising from this count are not only

wholly distinct from any of the allegations against Dr. Pourhassan, but they are also outside of the relevant time period of Dr. Pourhassan's alleged acts. As such, litigation of Mr. Kazempour's false statement charge will amount to an entirely distinct "mini-trial" whether or not the Court grants severance. Consequently, severing Mr. Kazempour's trial from that of Dr. Pourhassan's will not waste government resources. *See United States v. Hassoun,* 477 F. Supp. 2d 1210, 1230 (S.D. Fla. 2007) ("While severing the falsity counts may not lead to the quickest resolution of this matter, sometimes it is necessary for judicial economy to give way to the defendant's right to a fair trial.").

However, there is a serious risk that Dr. Pourhassan will be prejudiced should the cases remain joined as the evidence used to establish Mr. Kazempour's false statement charge will spill-over into the jury's evaluation of Dr. Pourhassan's guilt. "At a joint trial, where one defendant is charged with offenses in which the other defendant[ ] did not participate, the detailed evidence introduced to establish guilt of the separate offenses may shift the focus of the trial to the crimes of the single defendant. In such cases, codefendants run a high risk of being found guilty merely by association." *United States v. White,* No. 2:22-CR-029, 2023 WL 3959398, at *3, 4 (W.D. Va. June 12, 2023) (granting severance where "the risk of spillover" was "too great"); *see also United States v. Gee,* No. 3:07CR211, 2009 WL 412964, at *1 (W.D.N.C. Feb. 18, 2009) (overruling a co-defendant's objection to a court Order severing the perjury and obstruction of justice counts of one defendant from the rest of his co-defendants who were not implicated by the defendant's acts). Even if the Court were to find that this spill-over is not, alone, sufficient to warrant severance, courts have recognized that spill-over risk – combined with other factors – can support a severance decision. *See, e.g.*, *United States v. Carrasco*, 968 F. Supp. 948, 952 (S.D.N.Y. 1997) (spill-over in "combination with all the other factors" warranted severance). Here, especially given the

defendants' antagonistic defenses, and the prejudice of having one defendant prosecute the other, the spill-over prejudice further tips the scales of justice in favor of severance.

Consequently, as the risk of inefficient use of government resources is low, while the risk of prejudice to Dr. Pourhassan high, this Court should sever Dr. Pourhassan's trial from the trial of Mr. Kazempour.

**CONCLUSION**

This Honorable Court should sever the trial of Dr. Pourhassan and Mr. Kazempour.

Dated: Washington, D.C.
   July 25, 2023

           Respectfully submitted,

           Linklaters LLP

           By: */s/ Adam S. Lurie*
           Adam S. Lurie (MD Bar # 2109280004)
           Doug Davison, *Pro Hac Vice*
           601 13th St. NW #400
           Washington, D.C. 20005
           (202) 654-9200
           adam.lurie@linklaters.com
           doug.davison@linklaters.com

           Nicole E. Jerry, *Pro Hac Vice*
           Charlene Valdez Warner, *Pro Hac Vice*
           1290 Avenue of the Americas
           New York, NY 10104
           (212) 903-9000
           nicole.jerry@linklaters.com
           charlene.warner@linklaters.com

           *Attorneys for Defendant Nader Pourhassan*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2023, a copy of the foregoing was filed via CM/ECF, which automatically sends notice of such filing to all parties in this matter, including:

Aaron S.J. Zelinsky
Leo Joseph Wise
United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

Joshua DeBold
Christopher Fenton
Michael T. O'Neill
Department of Justice
1400 New York Ave
Washington, DC 20530

Benjamin A. O Neil
McGuireWoods LLP
888 16th Street N.W.
Black Lives Matter Plaza
Suite 500
Washington, DC 20006

Caroline S. Schmidt
McGuireWoods LLP
800 East Canal Street
Ste Gateway Plaza
Richmond, VA 23219

Jason H. Cowley
McGuireWoods LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202

*/s/ Adam S. Lurie*
ADAM S. LURIE
*Attorney for Defendant Nader Z. Pourhassan*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

```
------------------------------------------------------x
```
UNITED STATES OF AMERICA,

                             Plaintiff,

                  v.                                Case No. 8:22-cr-00440-PX

NADER POURHASSAN, and
KAZEM KAZEMPOUR,

                            Defendants.
```
------------------------------------------------------x
```

## [PROPOSED] ORDER

Upon consideration of Defendant Nader Pourhassan's Motion to Sever His Trial from that of His Co-Defendant, Kazem Kazempour, and all papers submitted in support and in opposition, it is this _____ day of _____, 2023, hereby:

**ORDERED** that the Motion is **GRANTED**.

_____
Hon. Paula Xinis
United States District Judge