UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

         v.

NADER POURHASSAN and KAZEM
KAZEMPOUR,

                Defendants.

------------------------------------x

Case No. 8:22-cr-00440-PX

**REPLY TO THE GOVERNMENT'S OPPOSITION TO
DR. POURHASSAN'S MOTION TO DISMISS THE INDICTMENT**

Dr. Nader Pourhassan ("Dr. Pourhassan"), by his undersigned counsel, hereby respectfully replies to the Government's Opposition to his Motion to Dismiss the Indictment (the "Opposition").

**INTRODUCTION**

In its Opposition, the Government seeks to avoid dismissal with hyperbolic indignation, referring to Dr. Pourhassan's well-founded constitutional concerns and citation to precedential Fourth Circuit law as "incredibl[e]." Opposition at 1, 37. In doing so, the Government claims that the Indictment charges Dr. Pourhassan with a "garden variety fraud that is neither new nor novel." Opposition at 1. To support this assertion, the Opposition focuses almost entirely on the Indictment's allegation that Dr. Pourhassan made false statements regarding the BLA's completeness, knowing that an "incomplete BLA would result in a 'definite' rejection," all to "inflate and maintain CytoDyn's stock price and attract new investors." Opposition at 5, 9, 24, 26, 28 and 41.

The Government is right. This theory is not "new or novel." The Fourth Circuit has previously considered and rejected this theory, thereby depriving Dr. Pourhassan of constitutionally required notice that his conduct here could be considered criminal. *See* Dr. Pourhassan's Motion to Dismiss the Indictment (the "Motion to Dismiss") at 2-3; 7-13. Indeed, in the context of biopharmaceutical companies and their CEOs, the Fourth Circuit could not have been clearer that the charged scheme theory is not even plausible, let alone illegal. It is simply "improbable that [Dr. Pourhassan and CytoDyn] would stake its existence on [a BLA for] a drug and a clinical trial that [Dr. Pourhassan and] the company thought was doomed [for] failure." *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) (internal citations omitted). The Government's "inference of fraud based on the supposed impossibility of [the BLA and the drug] clearing is thus not even plausible, much less convincing." *Id.*

Even more, the Fourth Circuit has also rejected as implausible the Indictment's intent theory that Dr. Pourhassan sought to "inflate and maintain CytoDyn's stock price and attract new investors." Opposition at 5. Here again, in the context of biopharmaceutical companies and their CEOs, the Fourth Circuit could not have been more clear: these alleged motives are insufficient to show fraudulent intent because this is precisely what biopharmaceutical company CEOs are supposed to do to develop critical drugs, "a strong inference of fraud does not arise merely from seeking capital to support a risky venture," and "motivations to raise capital or increase one's own compensation are common to every company and thus add little to an inference of fraud." *Cozzarelli*, 549 F.3d at 627 (internal citations omitted).

In fact, nowhere in the Opposition does the Government address—let alone even grapple with—the Fourth Circuit's express warning to courts against permitting accusations of securities fraud to proceed against biopharmaceutical companies and their executives for issuing positive

2

and bullish statements in order to raise funds. Motion to Dismiss at 2. This warning is especially applicable here, where Dr. Pourhassan and CytoDyn were creating "ground-breaking, experimental drugs designed to combat the world's deadliest illnesses" and now Dr. Pourhassan finds himself in the very "hot seat" that the Fourth Circuit cautioned against. *Emps.' Ret. Sys. of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 388 (4th Cir. 2023). Dr. Pourhassan is in this "hot seat" because the Government has done exactly what the Fourth Circuit has prohibited, namely "infer[ring] scienter from every bullish statement by [Dr. Pourhassan] that was trying to raise funds," thereby risking choking "off the lifeblood of innovation in medicine." *Cozzarelli*, 549 F.3d at 627.

Instead of adhering to Fourth Circuit law, or addressing these critical points, the Government's Opposition first offers irrelevant purported factual distinctions involving the Fourth Circuit and other case law discussed above and in the Motion to Dismiss. *See for example,* Opposition at 31-32. In doing so, the Government relies on unproven and unalleged characterizations regarding the Indictment's contents, such as an assertion that the statements at issue were "obviously false and misleading," (Opposition at 30) or that they involve "a history and pattern of deceptive conduct." Opposition at 31. As the Motion to Dismiss makes clear, these characterizations are not only unproven, but they are also incorrect. Motion to Dismiss at 7-13.

Critically, the Opposition fails entirely to address the Court's decision in *United States v. Brennan*, 183 F.3d 139, 150 (2d Cir. 1999), discussed at length in the Motion to Dismiss. Motion to Dismiss at 6-7. As explained in the Motion to Dismiss, *Brennan* responds directly to the Government's purported efforts to distinguish Fourth Circuit precedent, explaining that "[e]ven if these civil cases would be distinguishable from the facts presented here," they "substantially undercut the notion that" Dr. Pourhassan "had fair notice that" his conduct "could constitute a

crime." *Brennan*, 183 F.3d at 150; *see also United States v. Matthews*, 787 F.2d 38, 49 (2d Cir. 1986) ("When a person of ordinary intelligence has not received fair notice that his contemplated conduct is forbidden, prosecution for such conduct deprives him of due process.").

Then, the Opposition cites irrelevant caselaw, seeks to minimize the relevance of Fourth Circuit cases cited in the Motion to Dismiss as involving only the Private Securities Litigation Reform Act ("PSLRA"), and fails to otherwise demonstrate that Dr. Pourhassan had notice that his conduct was criminal.

Finally, contrary to the Opposition, the constitutional deficiencies involving the securities fraud charges (Counts 2, 3, 4 and 9) require dismissal of the remaining charges (Counts 1, 4, 5, 6, 10, 11-13) because they are entirely dependent on the same precluded theory of fraud. Opposition at 35; *see also* Motion to Dismiss at 4. Each of these counts relies on the allegation that Dr. Pourhassan acted knowingly and willfully with an intent to defraud—including the Government's claim of insider trading. *See, e.g.*, *Sec. & Exch. Comm'n v. AT&T, Inc.*, 626 F. Supp. 3d 703, 752 (S.D.N.Y. 2022) (to establish insider trading, the "Government must prove, among other things, scienter (intent to defraud) and intended personal benefit").

### 1. The Government's Opposition offers irrelevant caselaw.

The Government's Opposition relies on *Singer v. Reali*, 883 F.3d 425 (4th Cir. 2018) and *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015) (*see* Opposition at 29) to support the Indictment's theory of fraud. As an initial matter, both of these cases are civil cases under the PSLRA, thereby contradicting the Government's other argument that PSLRA cases "do not apply in criminal cases." Opposition at 28 n.9. The Court should not permit the Government to have it both ways. For the reasons discussed above and below, the Fourth Circuit PSLRA cases that Dr. Pourhassan cited do apply here.

Neither *Singer* nor *Zak,* however, are relevant.  First, neither case disavows, or otherwise calls into question, the Fourth Circuit's findings and warnings in *Cozzarelli* or *Employees' Retirement System of Baton Rouge*, the second of which is the Fourth Circuit's most recent relevant authority.  In fact, the Court in *Employees' Retirement System of Baton Rouge*, specifically addressed both *Singer* and *Zak*, distinguished and otherwise limited them to their facts, and *after* doing so, proceeded to warn courts against placing biopharmaceutical companies and their CEOs in the "hot seat," and for investors to "not expect that every fact known to an issuer supports its opinion statement."  61 F.4th at 388.

In addition, *Singer* did not even concern allegations against a biopharmaceutical company, let alone one involved in "ground-breaking, experimental drugs designed to combat the world's deadliest illnesses."  *Emps.' Ret. Sys. of Baton Rouge*, 61 F.4th at 388.  Instead, *Singer* involved allegations that a medical device company defrauded the United States Government and concealed that fraud from investors.  883 F.3d at 428.  Accordingly, none of the Fourth Circuit's warnings or holdings discussed in the Motion to Dismiss or above were even at issue in *Singer*.

On the other hand, *Zak* involved what the Court characterized as a "significant allegation" that the FDA had issued "a recommendation against approval of" the relevant drug, and the defendants allegedly concealed this fact from investors.  *Zak*, 780 F.3d at 610.  Here, there is no allegation that the FDA had told Dr. Pourhassan that it would not approve leronlimab.  This is an important difference between *Zak* and *Cozzarelli*.  Here, as in *Cozzarelli*, it is simply "improbable that [Dr. Pourhassan] would stake [CytoDyn's] existence on a drug and a clinical trial that the company thought was doomed [for] failure."  *Cozzarelli*, 549 F.3d at 627.  This implausibility was just not at issue in *Zak*, however, because of the FDA's express recommendation against approval.

**2. The Government's Opposition offers irrelevant assertions regarding the PSLRA.**

As explained above, the Government claims that Dr. Pourhassan's cited Fourth Circuit PSLRA cases "do not apply in criminal cases." Opposition at 28 n.9. In doing so, the Government claims that the PSLRA requires proof of different elements and heightened pleading standards. Opposition at 28 n.9. However, there is no dispute that the PSLRA and the charges in the Indictment all require allegations of fraudulent intent, and this is the focus of the Motion to Dismiss. Motion to Dismiss at 7-14. Indeed, the Motion to Dismiss addresses the portions of *Cozzarrelli*, *Employees' Retirement System of Baton Rouge*, and other cases, focused on whether the respective allegation of fraudulent intent was even plausible, and the unique concerns courts should show biopharmaceutical companies—not the "heightened pleading standards" or the need to "plead and prove different additional elements" in a civil case that the Opposition takes issue with. Motion to Dismiss at 2-4; Opposition at 28 n.9. In fact, the Motion to Dismiss does not even discuss "reliance, causation and loss" or other differences that the Opposition cites, all of which are a smokescreen which the Court should disregard. Opposition at 28. The Motion to Dismiss demonstrates that the Indictment's very theory of fraudulent intent has been rejected as implausible and improper by the Fourth Circuit. Motion to Dismiss at 2-4.

Moreover, in seeking to argue that the PSLRA is a civil statute, the Government misses the point—that the Fourth Circuit's rejection of the Government's theory of fraudulent intent is a matter of constitutional notice and it reveals the Indictment's pleading deficiencies. As the Court in *Brennan* explained in this regard, insofar as the Indictment was based on a theory of fraud that courts rejected in civil cases, "it violated the rule of lenity and the requirement of fair notice implicit in the concept of due process." *Brennan*, 183 F.3d at 149-50. As in *Brennan,* the Government "has pointed to no precedent for criminal liability," based on statements and actions

6

of a CEO of a biopharmaceutical company in circumstances like those presented here. *Id.* at 150. To the contrary, the Fourth Circuit and other courts have rejected the Indictment's theory of fraud here. It is a basic point of notice and fairness: if the Fourth Circuit has precluded a theory of liability in civil cases, how could Dr. Pourhassan possibly be on notice that he could be held *criminally* liable under that same theory?

In seeking to claim the PSLRA is not relevant here, the Government's Opposition also fails to address the requirement that courts must treat statutes consistently in the civil and criminal contexts. Motion to Dismiss at 5. Indeed, criminal statutes that also provide civil causes of action, such as the securities laws, should be interpreted strictly and consistently in both the criminal and civil contexts. *See Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*, No. 2:08CV1564, 2016 WL 5468111, at *16 (W.D. Pa. Sept. 29, 2016) (Court found that interpretation of the Computer Fraud and Abuse Act whose provisions have both civil and criminal application applies uniformly in both contexts), *citing Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.").

Simply put, there cannot be one construction of statutes for the civil courts and another for the Department of Justice. Motion to Dismiss at 5; *see also FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954) (Court ruled that construction of the law urged by the FCC should likewise apply in criminal cases). This Court must therefore interpret the securities and wire fraud statutes that the Government rely on consistently with their application in both criminal and noncriminal contexts. *See Leocal*, 543 U.S. at 11 n.8. Because the Fourth Circuit and other courts have rejected the theory of fraud put forward by the Government in the civil context, there is no basis to criminalize

7

such conduct, and under the rule of lenity, the Indictment against Dr. Pourhassan must be dismissed.

> 3. **The Government's Opposition otherwise fails to demonstrate that Dr. Pourhassan had notice that his conduct was criminal.**

The Government argues that Dr. Pourhassan "mischaracterizes the indictment as alleging that [Dr.] Pourhassan made 'overly optimistic statements about drug approval expectations.'" Opposition at 28. This is not a mischaracterization, and it is exactly what the Indictment alleges. For example, paragraphs 28 through 35 of the Indictment all concern allegations that Dr. Pourhassan made overly optimistic statements regarding when the BLA would be submitted, the prospects and timeline for leronlimab approval, and related expectations for CytoDyn. However, as discussed above and in the Motion to Dismiss, in a case against the CEO of a biopharmaceutical company, it is improper to "infer[] scienter from every bullish statement by a pharmaceutical company that was trying to raise funds." Motion to Dismiss at 3. Thus, to the extent Dr. Pourhassan did what the Indictment alleges—made overly optimistic or bullish statements—Dr. Pourhassan did not have notice that he was engaged in criminal conduct.

Indeed, factual allegations that the Government relies on consist of Dr. Pourhassan's actions, which altogether, are consistent with his role as a Chief Executive of a biopharmaceutical company seeking to finance such company's critical efforts in developing a drug with the potential of saving millions of lives—actions that the Fourth Circuit and other courts have declined to admonish under the securities laws. The following examples from the Opposition further demonstrate this lack of notice:

**Dr. Pourhassan's optimism with respect to the BLA timeline.** With respect to the HIV BLA, the Government alleges that Dr. Pourhassan "selected timelines for submission to the FDA that he knew CytoDyn and Amarex could not meet based on what he believed would artificially

8

inflate and maintain CytoDyn's stock price and attract new investors." Opposition at 28; Indictment ¶¶ 34-37. Contrary to the Government's claim, Dr. Pourhassan's "optimism" with respect to the timing of the BLA filing does not support an inference of fraudulent intent. Rather, his conduct was consistent with non-actionable statements of positive and optimistic corporate "expectation," which, at most, amount to mere puffery. *See Emps.' Ret. Sys. of Baton Rouge*, 61 F.4th at 386.

**Dr. Pourhassan's lack of knowledge that the BLA submitted on April 27, 2020 was "incomplete."** The Government also alleges that Dr. Pourhassan "directed Kazempour to submit a BLA that [they] knew the FDA would reject as incomplete in order to create the false appearance that CytoDyn had surpassed a milestone when, in reality, it had not." Opposition at 28-29; Indictment ¶¶ 15, 37. Additionally, the Government claims that Dr. Pourhassan "falsely claimed in April 2020 that CytoDyn had submitted a 'completed' BLA when he know [sic] that it had not." Opposition at 29; Indictment ¶¶ 16, 39-40. All these allegations again fail to demonstrate that Dr. Pourhassan had notice that he was subject to potential criminal liability.

First, consistent with his role as the CEO of CytoDyn, Dr. Pourhassan was of course motivated to get the BLA filed to receive FDA approval and to raise funds for ongoing clinical trials examining leronlimab's efficacy against other diseases. As the Fourth Circuit has made plain, this was his job—not a crime. *See Cozzarelli*, 549 F.3d at 627. In the April 14, 2020 e-mail that the Government relies on, Dr. Pourhassan wrote, "Please file the BLA no later than next Wednesday, even if we are short in no matter what portion of whatever it is that we are short." Indictment ¶ 37. The Government fails to explain how an out-of-context e-mail to Amarex that "the BLA should be filed even if it was 'short,'" equates to Dr. Pourhassan instructing Amarex to file an "incomplete" BLA.

9

In fact, the BLA was filed on April 27, 2020 (Indictment ¶ 38)—*two weeks* after the April 14, 2020 e-mail from Dr. Pourhassan—certainly not the following "Wednesday" as Dr. Pourhassan wrote.  The Indictment fails to allege that Dr. Pourhassan knew, or expected, that the BLA would not be completed during this two-week period.  Thus, the April 14, 2020 email does not support a claim that Dr. Pourhassan was on notice that his conduct could constitute a crime.

Second, the Government alleges that Dr. Pourhassan "falsely claimed . . . that CytoDyn had submitted a 'completed' BLA when he know [sic] that it had not" (Opposition at 29; Indictment ¶¶ 16, 39-40) but omits the important fact that CytoDyn's press release and investor call was held on April 27, 2020.  Indeed, according to the Indictment and Opposition, this press release and investor call both occurred *three days before* April 30, 2020 when the Indictment alleges that Dr. Pourhassan received from Amarex the FDA e-mail stating that the BLA was incomplete.  Indictment ¶ 42.  Thus, these allegations also do not demonstrate that Dr. Pourhassan had the requisite notice.

Additionally, CytoDyn's corrective disclosures in May 2020 following the filing of the BLA, negate, rather than support, a finding of fraudulent intent.  Motion to Dismiss at 9.  The Government alleges that CytoDyn's press releases in May 2020 "falsely claimed that a complete BLA had been submitted, knowing that CytoDyn did not possess the necessary data to complete the BLA."  Opposition at 29; Indictment ¶¶ 45-48.  To the contrary, these corrective disclosures clarify the status of the BLA to the public, including noting that "[t]he BLA will not be considered completed until the Company submits to the FDA clinical datasets required to address FDA comments it received in March 2020."  Indictment ¶ 46.  Finally, the Court should reject the Government's claim that this issue is "inappropriate for a motion to dismiss and instead, should [be] argued at trial."  Opposition at 33.  On the issue of whether Dr. Pourhassan had constitutionally

sufficient notice that his conduct could be criminal, the Court may appropriately consider such information prior to trial.  Motion to Dismiss at 8 n.1; *id.* at 11 n.3.

**Dr. Pourhassan's stock sales in April and May 2020**.  The Government also relies on allegations that Dr. Pourhassan "sold millions of dollars of CytoDyn stock for his own personal benefit before the public could learn the truth – and then lied to investors about that too." Opposition at 29 (citations omitted).  The Indictment cites a May 4, 2020 video interview of Dr. Pourhassan where "[he] explained that he 'exercised [his] options' in order to provide the company with funding for the following five to six weeks, which 'took a tremendous beating on [him]' because he 'ha[d] to pay hefty taxes.'"  Indictment ¶ 44.  Indeed, Dr. Pourhassan's statements comport with the fact that he provided a substantial amount of proceeds from his sales of options in April and May 2020 to enable CytoDyn to make payments due to Samsung Biologics, not to personally enrich himself.  Motion to Dismiss at 8 n.1.

The Government does not dispute that Dr. Pourhassan's sales assisted with providing critical funding to CytoDyn during this time, or that Dr. Pourhassan only received a fraction of the total value of his shares because of the overwhelming tax penalties he personally endured in order to facilitate CytoDyn's timely payment to Samsung Biologics (Dr. Pourhassan received only $4.4 million out of shares valued at a total of $15.6 million).  Opposition at 32; Indictment ¶ 43. Therefore, the Government's allegation in its Opposition that Dr. Pourhassan sold CytoDyn stock solely "for his own personal benefit," (an allegation that is missing in the Indictment) is contradictory to the very allegations that the Government cites.  *See* Opposition at 32 n.13; Indictment ¶ 44.  Thus, these allegations do not provide Dr. Pourhassan with the requisite notice.

**Dr. Pourhassan's statements regarding the significance of certain data related to CytoDyn's COVID-19 trials.**  The Government alleges that Dr. Pourhassan "falsely represented

11

that leronlimab was an effective treatment for COVID-19 without disclosing that the FDA had rejected the company's findings and analysis and admonished the company for making misleading public statements about results of its clinical trials." Opposition at 29; Indictment ¶¶ 5-12. As argued in Dr. Pourhassan's Motion to Dismiss, the Government failed to move its allegation from a mere disagreement with the FDA to an actionable misrepresentation or omission. Motion to Dismiss at 12-13. Again, the Government chooses to ignore the Fourth Circuit's repeated warnings about accusations of fraud against biopharmaceutical companies and their CEOs and the perfectly legitimate goal for these companies' CEOs to protect their respective company's stock price to move forward with costly clinical trials to support the successful launch of a new drug that could potentially treat some of the world's deadliest diseases. The only thing "garden variety," (Opposition at 36), in this case is that the Chief Executive of an innovative biopharmaceutical company was doing what he was hired to achieve: raise funds for the company and be vigilant about the stock price in order to move forward with the company's mission.

Ultimately, throughout the Indictment and the Opposition, the Government seeks to criminalize and infer fraud from all of Dr. Pourhassan's legitimate efforts to raise money and keep CytoDyn afloat. The Government's attempt to turn Dr. Pourhassan's optimistic and positive statements about a drug he truly believed worked for patients into fraud falls flat as the statements and communications on which they rely do not support allegations of fraudulent intent or put Dr. Pourhassan on notice that his conduct was criminal.

## CONCLUSION

For all of the reasons stated above together with Dr. Pourhassan's Motion to Dismiss the Indictment, Dr. Pourhassan respectfully requests that the Court dismiss the Indictment against him.

Dated:   Washington D.C.
         August 29, 2023

Respectfully submitted,

Linklaters LLP

By:   /s/ *Adam S. Lurie*

Adam S. Lurie (MD Bar # 2109280004)
Doug Davison, *Pro Hac Vice*
601 13th St. NW #400
Washington, D.C. 20005
Telephone: (202) 654-9200

Nicole E. Jerry, *Pro Hac Vice*
Charlene Valdez Warner, *Pro Hac Vice*
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000

*Attorneys for Defendant Nader Z. Pourhassan*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 29, 2023, a copy of the foregoing was filed via CM/ECF, which automatically sends notice of such filing to all parties in this matter, including:

Aaron S.J. Zelinsky
Leo Joseph Wise
United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

Joshua DeBold
Christopher Fenton
Michael T. O'Neill
Department of Justice
1400 New York Ave
Washington, DC 20530

Benjamin A. O Neil
McGuireWoods LLP
888 16th Street N.W.
Black Lives Matter Plaza
Suite 500
Washington, DC 20006

Caroline S. Schmidt
McGuireWoods LLP
800 East Canal Street
Ste Gateway Plaza
Richmond, VA 23219

Jason H. Cowley
McGuireWoods LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202

                                                */s/ Adam S. Lurie*
                                                Adam S. Lurie
                                                *Attorney for Defendant Nader Z. Pourhassan*