**U.S. Department of Justice**

Criminal Division

---

*Fraud Section*                                    *Washington, D.C. 20530*

November 13, 2023

The Honorable Paula Xinis
6500 Cherrywood Lane
Suite 255
Greenbelt, MD 20770

      **Re: *United States v. Pourhassan*, No. 22-cr-440**

Dear Judge Xinis:

      The government writes in response to defendant Kazem Kazempour's October 30, 2023 letter (ECF No. 74) and defendant Nader Pourhassan's November 3, 2023 letter (ECF No. 75), seeking the Court's intervention in a discovery dispute. In the letters, the defendants request that the Court order the government to obtain and produce materials that are not in the prosecution team's possession, custody, or control—namely, additional U.S. Food and Drug Administration (FDA) internal communications relating or referring to CytoDyn's 2020 biologic license application (BLA) for investigational drug Leronlimab.

      At issue here is the scope of the government's duty, if any, to search the FDA's files for information that is either material to preparing the defense under Federal Rule of Criminal Procedure 16 or exculpatory under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To the extent that the prosecution team has information responsive to the defendants' request, it has been produced or will be produced consistent with the government's discovery obligations, as discussed further below. However, the government cannot be required to produce information that is not in the prosecution team's possession, custody, or control. Contrary to the defendants' argument, having a special agent from the FDA's Office of Criminal Investigations, the criminal law enforcement arm of the FDA, involved in the investigation does not mean that the broader FDA and its separate civil subdivisions are part of the prosecution team. As such, the government does not have a duty to search the broader FDA officials' internal communications, and the defendants' request should be denied.

**I.     Legal Standard**

      Rule 16 requires the government to provide the defendants with access to certain categories of materials if the item is (1) "within the government's possession, custody, or control," and (2) "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The government's obligations are narrower under *Brady*, which "rests upon due process considerations and provides the minimum amount of pretrial discovery" required in criminal cases. *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010); *see also United States v. Meintzschel*, 538 F. Supp. 3d 571, 578 (E.D.N.C. 2021). To require disclosure under *Brady*, information must be: (1) favorable to the defendant, (2)

material to the defense, and (3) within the prosecution's possession. *See United States v. Taylor*, 942 F.3d 205, 225 (4th Cir. 2019).

The Supreme Court addressed what is "within the government's possession" in *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), holding that *Brady's* disclosure requirements extend to information "known to the others acting on the government's behalf in the case, including the police." In support of their argument that under *Kyles* the government is required to obtain the FDA's internal communications about CytoDyn's BLA, the defendants relied on two Ninth Circuit decisions, two D.C. Circuit decisions, and several district court decisions, none of which accurately represents the controlling law. *See* ECF No. 74 at 2-3. Moreover, the defendants mischaracterize the only case cited from within the Fourth Circuit, *United States v. Liberto*, No. 19-cr-600, 2021 WL 4459219, at *7-8 (D. Md. Sept. 29, 2021). The defendants cite to *Liberto* for the principle that "[c]ourts have repeatedly held the prosecution accountable for evidence held by cooperating agencies." ECF No. 74 at 3. However, *Liberto* is inapt because the case involved a violation of *Brady* and Rule 16 where the government's *case agent* had in his *actual possession* materials that were not disclosed to the defendant until the eve of trial. *Id.* at *3, 7-9.

In 2019, in *United States v. Taylor*, the Fourth Circuit applied the standard articulated in *Kyles* and declined to extend the government's *Brady* obligations beyond the agents working on the same case. *See* 942 F.3d at 225-226. District courts within the Fourth Circuit have interpreted *Taylor* as limiting the scope of the government's discovery obligations under *Brady* and Rule 16 where the material at issue was in the custody of a different government agency. *See United States v. Oman*, No. 18-cr-311, 2022 WL 10128432, *7-9 (W.D.N.C. Oct. 17, 2022) (prosecution is not under a duty "to learn of any favorable evidence known by any government agent") (quoting *Taylor*, 942 F.3d at 225-226); *United States v. Individor*, No. 19-cr-16, 2019 U.S. Dist. LEXIS 219573, *11-13 (W.D. Va. Dec. 23, 2019) ("prosecution is not required to disclose evidence from separate investigations by other law enforcement agencies that are not part of the same investigative team") (quoting *Taylor*, 942 F.3d at 225-226). In those cases, the courts followed decisions from the First, Third, and Seventh Circuits, writing, for example:

> The Fourth Circuit has not considered whether the participation of one subdivision of an agency obligates other divisions of the parent agency to participate in criminal discovery. But at least three other circuits have held that the prosecution is not required to produce information possessed by a separate subdivision of a participating agency when it had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents.

*Individor*, 2019 U.S. Dist. LEXIS 219573, at *13 (collecting cases, including: *United States v. Pelullo*, 399 F.3d 197, 216-18 (3d Cir. 2005); *United States v. Casas*, 356 F.3d 104, 116 (1st Cir. 2004); *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996)); *see also Oman*, 2022 WL 10128432, at *7 (citing *United States v. Merlino*, 349 F.3d 144, 155 (3d Cir. 2003)). The Court should apply that holding to the case at bar: the prosecution is not required to produce information possessed by a subdivision of a participating agency when that subdivision had no part in the criminal investigation and the prosecution team had no control over the agency officials who physically possessed the documents.

2

## II.    Analysis

### A.  The government already produced the FDA records subject to disclosure.

Consistent with the government's discovery obligations under Rule 16 and *Brady*, the government already provided the defendants with records, including internal communications, obtained from the FDA.  *See e.g.*, Def.'s Ex. D, ECF No. 74-4.  The government also disclosed reports of interviews of FDA officials, which describe their views of CytoDyn and the defendants. *See* Def.'s Ex. A, ECF No. 74-1 at 5 n.1, 4; *see also* Def.'s Ex. B, ECF No. 74-2.

The government obtained evidence from the FDA pursuant to a formal request for disclosure of FDA records, as required by federal regulations.  *See* 20 C.F.R. § 20.2.  The FDA, by the nature of the work it does, receives a huge volume of record requests through a variety of channels.  The agency's records are extensive and complicated in that they include information and documents from varied sources involved in the agency's comprehensive work on food and drug issues.  As required by Title 21, Part 20 of the Code of Federal Regulations, the FDA's record production process is regulated to ensure the fair and careful handling of the many requests it receives.  Following FDA's record production processes in this case, the FDA determined the groups and individuals within the agency likely to have responsive records, collected the responsive records, reviewed the records, and produced them to the government, unless disclosure was prohibited by regulation or protected by privilege.  In addition, the FDA criminal special agent had access to an FDA database, from which records were collected and produced to the defendants. Similarly, interviews of FDA employees were obtained consistent with the FDA's procedures and in coordination with the FDA's Office of Chief Counsel, and reports of such interviews were produced to the defendants.

### B.  The defendants' additional records requests are outside the scope of the government's disclosure obligations.

The government does not agree with the defendants' contention that because the prosecution team obtained certain documents from the FDA and interviewed some FDA witnesses, that the prosecution team then has an obligation (or ability) to conduct a broad search of the FDA's communications.  The formal process by which the government obtained records from the FDA is a far cry from defendant Kazempour's assertion that the government has had "ready access to the FDA's communications."  As noted by one court, "the need for formal process in the acquisition of documents is the antithesis of 'access.'" *United States v. Salyer*, 371 F.R.D. 148 (E.D. Cal. 2010).

To the extent that the additional FDA communications sought by the defendants exist, they are not in the government's possession because the FDA is not part of the prosecution team.  The government disagrees with the defendants' assertion that the FDA is a "cooperating agency" and as such, the government is responsible for any materials in their possession.  Federal agencies are not monolithic.  The participation of one arm of an agency in a criminal prosecution does not automatically makes the entire agency part of the prosecution team.  For example, in a criminal tax case, the government is not obligated to obtain records in the possession of the civil side of the IRS, when only the IRS's Criminal Investigation Division was involved in the investigation.  *See*

*United States v. Bibby*, 752 F.2d 1116, 1124-25 (6th Cir. 1985); *see also United States v. Pelullo*, 399 F.3d 197, 216-19 (3d Cir. 2005) (concluding that the government's *Brady* obligation did not extend to documents in the possession of a civil division of the United States Department of Labor (DOL), even though criminal case utilized criminal agents from DOL; under the facts and circumstances of the case, civil arm of agency was not part of prosecution team). Here, too, having an agent from the FDA's Office of Criminal Investigations involved in the investigation does not mean that the broader FDA and its civil subdivisions are part of the prosecution team.

The defendants incorrectly allege that "information is also within the government's possession, custody, or control because the FDA – including individuals who reviewed the BLA – actively cooperated with the government and continue to do so." ECF no. 74 at 1. However, as discussed above, the defendants cite no authority that stands for "this rule – that the prosecution must produce evidence held by cooperating agencies." ECF No. 74 at 3 (citing *Libby* for other purposes). The FDA is an agency within the Department of Health and Human Services that consists of nine Center-level organizations and thirteen Headquarter Offices. During its criminal investigation, the government did not engage in joint fact finding or share resources with civil components within the FDA. The FDA officials who provided responsive records and were interviewed by the government played no role in the criminal investigation. Likewise, the criminal case agent did not have access to FDA officials' custodial files and communications or control the collection of materials from those sources. Accordingly, the FDA is not part of the prosecution team, and the government does not have possession, custody, or control over the FDA's records.

### C. To the extent that additional internal FDA communications exist, they are likely cumulative and not material to the defense.

Contrary to the defendants' argument, "the FDA's internal consideration of [the BLA]" is not "central to this case." ECF No. 74 at 2. The indictment charges defendant Kazempour with submitting CytoDyn's BLA to the FDA knowing that it was incomplete and that the FDA would refuse to file it on that basis in order to fraudulently increase the value of CytoDyn's stock. *See* Indictment, ECF No. 1 at 8-9. It is the *defendants'* knowledge and intent at the time they submitted the BLA that is central to this case. As such, to the extent that there are additional internal FDA communications that have not already been collected and produced by the government, such communications are likely cumulative and collateral to the issues in this case – and not exculpatory.

The additional grounds for defendant Kazempour's request for discovery (which defendant Pourhassan does not join) similarly do not warrant the Court's intervention at this time. Defendant Kazempour claims that evidence FDA officials held a negative view of CytoDyn and defendant Pourhassan is material to his defense. Defendant Kazempour goes on to say that the FDA refused to file CytoDyn's BLA application not because it was incomplete but because the FDA held a negative view of CytoDyn and Pourhassan. ECF No. 74 at 1. In its case-in-chief, the government anticipates calling one to three FDA officials to testify to their interactions and communications with the defendants and others at CytoDyn and Amarex regarding the BLA submission and review process. Assuming *arguendo* that the testifying FDA officials held a negative view of CytoDyn or the defendants, that fact could be fair grounds for cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("the partiality of a witness is subject to exploration at trial and is 'always

4

relevant as discrediting the witness and affecting the weight of his testimony'"). In accordance with its ongoing discovery obligations, as the government continues to prepare for trial, the government will review and timely produce any discoverable material. As such, the Court's intervention is not needed as to this aspect of defendant Kazempour's request.

For the reasons set forth herein, the defendants' request for the Court to order the government to obtain internal communications from the FDA should be denied.

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice, Criminal Division

By:     /s/ Lauren Archer
        Lauren Archer
        Christopher Fenton
        Trial Attorneys, Fraud Section
        Michael T. O'Neill
        Assistant Chief, Fraud Section
        U.S. Department of Justice, Criminal Division


        EREK L. BARRON
        UNITED STATES ATTORNEY

By:     /s/
        Aaron S.J. Zelinsky
        Assistant United States Attorney
        U.S. Attorney's Office
        District of Maryland
        36 S Charles Street
        Baltimore, MD 21201
        Phone: (410) 209-4928
        Email: Aaron.Zelinsky@usdoj.gov

## CERTIFICATE OF SERVICE

      I, Lauren Archer, hereby certify that on November 13, 2023, I caused the foregoing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

                                            By:      */s/ Lauren Archer*
                                                      Lauren Archer
                                                      Trial Attorney
                                                      U.S. Department of Justice
                                                      Criminal Division, Fraud Section
                                                      1400 New York Avenue, N.W.
                                                      Washington, D.C. 20005
                                                      Phone: (202) 538-3859
                                                      Lauren.Archer2@usdoj.gov