# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NADER POURHASSAN and<br>KAZEM KAZEMPOUR,<br><br>              *Defendants*. | 8:22-CR-440 |

**DEFENDANT KAZEM KAZEMPOUR'S OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE OR SEAL**

**ARGUMENT**

Dr. Kazempour submits this response in opposition to the government's Motion to Strike or Seal exhibits filed on the public docket. ECF No. 120. The government objects to the public filing of certain exhibits attached to Dr. Kazempour's motion *in limine* and discovery letter that contain internal and external FDA communications—exhibits that are heavily quoted in both Dr. Kazempour's and the government's unsealed briefing to the Court, and several of which the government quoted almost in full in its unsealed indictment. The government misreads the plain text of the Protective Order that it drafted. These exhibits do not contain any "Protected Information" of FDA employees, so they did not have to be filed under seal. Dr. Kazempour thus asks the Court to deny the government's motion.

The parties agreed to a limited Protective Order "governing disclosure of personal identity, financial, contact, grand jury, court, and investigative information." ECF No. 92, at 1. The Protective Order provides that "[n]o party shall file documents containing Protected Information to the Court or reproduce Protected Information in any court filing unless the document or filing containing the Protected Information is placed under seal or all information that would identify the subject of the document or filing has been removed or redacted." *Id.* at 5. The government's motion fails to note that "Protected Information" is a defined term, referring to six limited categories of information:

1. "Protected Personal Identity Information," like date of birth and Social Security Number;
2. "Protected Financial Information," like bank account numbers;
3. "Protected Contact Information," like home addresses and personal phone numbers;
4. "Protected Grand Jury Information";
5. "Protected Court Information," or materials, like search warrants, that have already been filed under seal; and

1

6. "Protected Investigative Information," or "information related to ongoing criminal investigations who disclosure may adversely impact the ongoing investigations by causing the subjects of those investigations to flee, destroy evidence or otherwise obstruct justice."

*Id.* at 2. These six categories are "collectively, 'Protected Information.'" *Id.* at 1.

As the Protective Order explains, these limited categories of information may be protected under several federal statutes, including the Privacy Act, 5 U.S.C. § 552a. *Id.* at 2–3. The Protective Order tasks the government with identifying documents that may contain Protected Information by flagging them as "confidential." *Id.* at 3. The Protective Order makes clear that it applies only to *Protected Information*, not the entire document containing that Protected Information. For example, the Protective Order advises that, for "Protected Information in Court Filings," the parties should consider "remov[ing] individual identifiers," "substitut[ing] a numerical or other designation for the Protected Information," and "assuring that all Protected Information associated with individuals have been redacted." *Id.* at 4.

The exhibits at issue—primarily internal communications between FDA employees that indicate animus against CytoDyn—do not appear to contain any "Protected Information" of FDA employees. These email exchanges do not have any Protected Personal Identity Information or Protected Contact Information, like personal cell phone numbers. Nor do they have any Protected Financial Information, like bank account numbers. The government, in its production cover letter for the first batch of internal FDA communications, noted that "[t]hese records contain confidential information and are subject to the [P]rotective [O]rder." But the government did not identify which information in these documents is confidential or counts as Protected Information subject to the Protective Order. Dr. Kazempour raised this issue with the government before the government filed this motion, asking the government to identify any Protected Information in the exhibits filed with the Court. The government never responded but instead filed its Motion to Seal or Strike.

2

The government apparently reads the Protective Order to mean that it can simply note in a cover letter that the documents it is producing are "confidential" and all documents in that production must be filed under seal. But nothing in the Protective Order suggests that unilaterally marking a document as "confidential" is sufficient to turn it into "Protected Information." Indeed, Dr. Kazempour would not have agreed to such a Protective Order, given the strong constitutional interest in public access to criminal trials and pre-trial proceedings. *See United States v. Doe*, 962 F. 3d 139, 145 (4th Cir. 2020) ("Criminal proceedings and *related documents* are . . . presumptively open to the public.") (emphasis added); *In re The Wall Street Journal*, 601 Fed. App'x 215, 218 (4th Cir. 2015) ("The public enjoys a qualified right of access to criminal trials, pretrial proceedings, and documents submitted in the course of a trial, *including documents filed in connection with a motion to dismiss an indictment and other pretrial filings*.") (internal citations and quotation marks omitted; emphasis added).

In its motion, the government asserts for the first time that FDA internal communications must be sealed in their entirety because they count as internal agency materials "protected from public disclosure" by 5 U.S.C. § 552(b). That statutory provision, which is not mentioned in the Protective Order, protects internal agency deliberative materials from production through FOIA requests. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). The government has identified no case suggesting that this provision means that these agency materials must be filed under seal in a criminal trial. The government reasons that sealing these communications was the only reason it "file[d] a Protective Order at [this] late stage in the proceedings." ECF No. 120, at 3. But the government has identified no communication to the defendants stating that the government intended that internal FDA communications be sealed in their entirety for the duration of the case. Instead, the government's production cover letter simply

3

stated that the communications "are subject to the protective order." Dr. Kazempour was entitled to rely on the plain text of that Protective Order.

If the government had identified particular Protected Information in the exhibits, Dr. Kazempour would have been willing to have a conversation about that information and redact as appropriate rather than burdening the Court with another dispute among the parties. And Dr. Kazempour remains open to making those redactions to the extent that the government can identify any Protected Information that should be shielded from public view. But the government—faced with internal documents that cast a federal agency in an unfavorable light—has instead scrambled to stretch the Protective Order to cover these documents in their entirety and then accused the defendants of misreading the Protective Order. The government also has indicated that it does not intend to produce the next batch of internal FDA communications, due tomorrow, April 12, under this Court's order (ECF No. 102), unless the defendants agree to the government's reading of the Protective Order.

For these reasons, Dr. Kazempour asks the Court to deny the government's motion.[1]

Dated: April 11, 2024                Respectfully submitted,

*/s/ Ben O'Neil*
Benjamin A. O'Neil (Fed. Bar No. 29078)
**MCGUIREWOODS LLP**
888 16th Street N.W., Suite 500

---

[1] In its motion, the government suggests that Dr. Kazempour refiled his motion *in limine* with different exhibits after "apparently realizing his error in publicly filing confidential materials required to be redacted or filed under seal." ECF No. 120, at 2. Dr. Kazempour filed one motion *in limine* but attached the exhibits in two different batches, as Pacer would not allow all of the exhibits to be filed as one docket entry due to file size. *See* ECF No. 103 (attaching motion *in limine* and the first 14 exhibits); ECF No. 104 (reattaching motion *in limine* and the remaining 11 exhibits). Dr. Kazempour did not withdraw any of these exhibits. If the Court would prefer that these exhibits be filed in a different format, Dr. Kazempour is happy to do so.

Black Lives Matter Plaza
Washington, DC 20006
Telephone: (202) 857-2466
Fax: (202) 828-2966
boneil@mcguirewoods.com

Caroline Schmidt Burton (Fed. Bar No. 13303)
(Admitted as "Caroline Susan Schmidt")
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-7651
Fax: (804) 698-2049
cburton@mcguirewoods.com

Jason H. Cowley (Admitted *pro hac vice*)
**McGuireWoods LLP**
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2030
Fax: (704) 373-8830
jcowley@mcguirewoods.com

***Counsel for Defendant***
***Kazem Kazempour***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 11, 2024, a copy of the foregoing document was electronically filed and served on all counsel of record via the Court's CM/ECF system.

>*/s/ Ben O'Neil*
>Benjamin A. O'Neil (Fed. Bar No. 29078)
>**MCGUIREWOODS LLP**
>888 16th Street N.W., Suite 500
>Black Lives Matter Plaza
>Washington, DC 20006
>Telephone: (202) 857-2466
>Fax: (202) 828-2966
>boneil@mcguirewoods.com