UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------------------------x

UNITED STATES OF AMERICA,

                      v.

NADER POURHSSAN, and KAZEM
KAZEMPOUR,

                      Defendants.

------------------------------------------------------------x

8:22-cr-00440-PX

**REPLY IN FURTHER SUPPORT OF
DEFENDANT NADER POURHASSAN'S MOTION TO EXCLUDE
EXPERT TESTIMONY OF PETER MELLEY**

Defendant Nader Pourhassan ("**Dr. Pourhassan**"), through his undersigned counsel, submits this Reply memorandum in support of his Motion to Exclude the Testimony and Opinions of Peter Melley ("**Mr. Melley**") (ECF No. 153) (the "**Motion**").

**PRELIMINARY STATEMENT**

In its Opposition to the Motion filed on June 3, 2024 (ECF No. 159) (the "**Opposition**"), the Government asserts that "Mr. Melley [is being offered] as a non-expert summary witness to introduce basic securities concepts ('Securities 101') and summarize market data and information reported in CytoDyn's public filings with the Securities and Exchange Commission (SEC)." However, notwithstanding this characterization, the Government fails to address the majority of Mr. Melley's proffered topics which require specialized knowledge (the "**Melley Expert Topics**") (*see* Motion at 2) and is expert testimony.

First, Mr. Melley's anticipated testimony of providing "an overview of capital markets generally, over-the-counter markets specifically, publicly-traded companies and how publicly-traded companies are financed" (*see* ECF No. 153-1 at 3) is testimony requiring "scientific, technical, or other specialized knowledge" of the securities market. *See* Fed. R. Evid. 702. The Opposition ignores that in *United States v. Shah*, the Government argued that Mr. Melley would "explain the over-the-counter securities markets and define various terms for the jury," and that such testimony "falls squarely" within Rule 702. Mot. *in Limine* Concerning Admissibility of Test About Securities Regulation and Terminology ("**Shah Mot. in Limine**") at 4, *United States v. Shah*, No. 14-CR-10135-NMG, 2015 WL 13892740 (D. Mass. Jan. 20, 2015), ECF No. 62

Second, explaining "the duties of the CEO of a publicly-traded company, including honesty," again requires specialized training and knowledge. Motion at 6. The Government's argument that Mr. Melley would be expected to testify about "uncontroverted facts" (Opposition

at 2) is also misleading. Indeed, a CEO's duties, given the facts of this case, are not "uncontroverted," but are contested here. For example, Dr. Pourhassan will contest the Government's apparent view that it is an improper exercise of duty for a CEO to rely on countless experts in making public statements to investors. Further, a CEO's duty of honesty necessarily involves a discussion of fiduciary, regulatory and other corporate governance principles. Any such discussion would fall within the proper purview of expert testimony, which the Government did not properly disclose under Rule 16 and this Court's Amended Scheduling Order. ECF No. 94.

Third, Mr. Melley's testimony "explain[ing] ways in which [] public companies communicate with their investors and the market, including press releases and periodic SEC filings", ECF No. 153-1 at 3, would also constitute expert testimony because Mr. Melley would be basing his opinion again on his specialized knowledge of the technical ins and outs of the "securities markets, the practices of public companies, SEC requirements and related matters." Motion at 6.

Fourth, Mr. Melley would base his explanation regarding "factors relevant to stock price, including company-specific information communicated by a publicly-traded company to investors in press releases and periodic SEC filings," ECF No. 153-1 at 3, on his specialized and technical knowledge in the industry. Motion at 7.

Even where Mr. Melley does not offer an opinion, expert testimony encompasses not just an expert providing an opinion, but anything that educates the jury based on a specialized skill set. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). This Court recognized as much at the April 15 Hearing. *See* Apr. 15, 2024 Hr'g Tr. at 34:12-15 (acknowledging that a primary function of expert testimony "is to educate").

Finally, allowing Mr. Melley to testify as a "summary witness," without qualifying him as an expert, would still improperly confuse the jury and result in undue prejudice to Dr. Pourhassan. *See* Motion at 9-10.[1]

## ARGUMENT

I.  **The Majority of Mr. Melley's Proposed Testimony Constitutes Expert Opinions, Not "Summary" and "Fact" Testimony**

In its Opposition, the Government attempts to characterize *all* of Mr. Melley's proposed testimony as "summary" and "fact" testimony. Opposition at 1. This is inaccurate. Indeed, only one topic of Mr. Melley's anticipated testimony could conceivably fall within the ambit of summary witnesses: "summariz[ing] CYDY's issuance and sale of securities (which will likely be an FRE 1006 summary chart exhibit that summarizes voluminous information from CytoDyn's 10-Qs and 10-Ks[)]." ECF No. 153-1 at 3. As discussed in Dr. Pourhassan's Motion, the Government should not be permitted to avoid the requirements of Rule 16 of the Rules of Criminal Procedure as well as Rule 702 of the Federal Rules of Evidence by mischaracterizing Mr. Melley's proposed testimony as "summary" and "fact," when the *majority* (at least four out of five proffered topics, *see id.*) of such proposed testimony constitutes expert testimony. Motion at 3.

Remarkably, the Opposition ignores that the Government has previously argued that Mr. Melley's anticipated testimony here "falls squarely" within Rule 702 concerning expert testimony.

---

[1] It would also be prejudicial to permit the Government to seek to qualify Mr. Melley as an expert now. Not only have the relevant deadlines passed, *see* Motion at 8-9, but the Government has now seen Dr. Pourhassan's expert disclosures and learned much more about Dr. Pourhassan's trial strategy. Thus, in seeking to qualify Mr. Melley, the Government would have an unfair advantage, and could seek to "pre-rebut" Dr. Pourhassan's potential defense despite the Government's unequivocal statement that it will not call any experts in its case in chief or in rebuttal. *See* Apr. 15, 2024 Hr'g Tr. at 37:17-25 (where the Government affirmed to the Court that they "have not" and are "not planning on calling any experts" and when the Court asked if they would not be calling any experts "even for potential rebuttal," the Government confirmed, "No."). In addition, Dr. Pourhassan has structured his entire defense strategy in reliance on the Government's representations that it will not call such experts, and significant resources have been expended in doing so.

3

Motion at 2; *see also Shah* Mot. *in Limine* at 4.  Just like in this case, in *Shah,* the Government argued that Mr. Melley would "explain the over-the-counter securities markets and define various terms for the jury" – the only crucial difference being that Mr. Melley would offer such evidence in *Shah* as an expert.  *Shah* Mot. *in Limine* at 4.

The cases the Government relies on are inapposite.  For example, in *Bryant*, the court permitted lay witness testimony as it related to submitting "simple statistical calculations such as averages," and specifically "the mere calculation of an average of 103 numbers," finding that a "calculation well within the ability of anyone with a grade-school education is . . . more aptly characterized as a lay opinion."  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).  This is not the case here, where the Melley Expert Topics clearly go beyond "[t]aking a simple average," *id.* at 1124, and instead concern technical and specialized knowledge involving factors relevant to stock price, duties of CEOs of publicly-traded company and other topics within the complex regulatory framework of securities.  Opposition at 6; *compare also with Depalma v. Scotts Co.*, Civ. No. 13-7740 (KM) (JAD), 2019 WL 2417706, at *7 (D.N.J. June 10, 2019) (where court permitted plaintiffs to use a chart summarizing employee work hours and payroll data that only required simple arithmetic).  Here, Mr. Melley's anticipated testimony on corporate securities, duties of corporate officers, and outlining stock sales and issuances are not easily-understood concepts "well within the ability of anyone with a grade-school education." *Bryant*, 432 F.3d at 1124.

The Government also improperly relies on *United States v. Thompson*, where a lay witness was permitted to testify in a case involving a GPS tracking device that led to the apprehension of a bank robber, where such witness actually sold a GPS device to the bank the defendant robbed.  *See* 393 F. App'x 852, 858 (3d Cir. 2010).  In *Thompson*, the lay witness could base his testimony

4

on his actual experience and first-hand perception of the GPS devices at issue, unlike Mr. Melley who did not participate in the investigation of CytoDyn nor had any prior understanding of the company before Dr. Pourhassan's indictment.

The case of *United States v. Faulkenberry*, 614 F.3d 573 (6th Cir. 2010) is also inapplicable here. The Government relies on *Faulkenberry* for the proposition that "[c]ourts routinely permit non-experts to summarize voluminous evidence." (Opposition at 5.) In *Faulkenberry*, a lay witness was permitted to summarize a large amount of readily available data regarding compensation paid to executives of the defendant's former employer. *Id*. The witness testimony in *Faulkenberry* "required only everyday reasoning rather than specialized knowledge" to which the witness offered neither "independent determinations" nor "conclusions as to what the data meant." *Id*. This presents a sharp contrast to the proposed testimony of Mr. Melley, who the Government anticipates will "explain the duties of the CEO of a publicly-traded company, including honesty[,]" "explain factors relevant to stock price[,]" and "explain ways in which [] public companies communicate with their investors." *See* ECF No. 153-1 at 3. Mr. Melley *will* be providing independent and subjective determinations regarding the duties of a CEO, the factors impacting stock price and public disclosures to investors in publicly-held companies developed from – and through the filter of – his over 25 years of work at FINRA and the Criminal Prosecution Assistance Group. *See* ECF No. 153-3 at 461:2-9. If these topics could be understood only with "everyday reasoning[,]"*Faulkenberry*, 614 F.3d at 588, then they would not require a witness with extensive financial regulatory experience to "explain" them. ECF No. 153-1 at 3.

**II.     Mr. Melley Testifying as a "Fact" and "Summary" Witness Will Improperly Confuse the Jury and Would Cause Undue Prejudice to Dr. Pourhassan**

Having Mr. Melley serve as a "fact" and "summary" witness for the Government would confuse the jury and unfairly prejudice Dr. Pourhassan. Summary testimony by experts, who are

5

not properly qualified, is especially prejudicial. In *United States v. Hart*, the Fifth Circuit found a Farm Services Agency agent, who was *not* designated as an expert witness, could not offer summary testimony regarding Farm and Home Plan debt results without the government first providing proof to support that those debts needed to be reported at all. 295 F.3d 451, 458-59 (5th Cir. 2002). *See also United States v. Norris*, No. 1:08-CR-343 (LEK), 2010 WL 11463302 (N.D.N.Y. Dec. 27, 2010) (denying government's motion for partial reconsideration of order that the proposed summary witnesses' testimony was inappropriate as such testimony threatens to "usurp the jury's function and can, despite their not being called as an experts [*sic*], confuse the jury where the agents are presented with an aura of expertise and authority") (internal citations omitted); *see also Jewett v. Am. Nat'l Prop. & Cas. Ins.*, No. 19-CV-02015-CMA-STV, 2021 WL 791500, at *2 (D. Colo. Mar. 1, 2021) (holding that "[a] party cannot offer de facto expert testimony under the guise of presenting lay witness testimony"); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (reversing on the basis that testimony which required calculations beyond basic mathematics was improperly admitted as lay testimony); *Dorchy v. Fifth Third Bank*, 584 F. Supp. 3d 424, 427 (E.D. Mich. 2022) (finding that Congress understood this to be such a concern that they created new Rules to "ensure[ ] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson"). Consistent with this and similar caselaw, the Court should not permit the Government to circumvent Rule 702, thereby improperly prejudicing Dr. Pourhassan.

## CONCLUSION

For the foregoing reasons, this Court should grant Dr. Pourhassan's Motion and exclude Mr. Melley's testimony at trial.

Dated: June 10, 2024

Respectfully submitted,

Linklaters LLP

By:   /s/ *Adam S. Lurie*
Adam S. Lurie (MD Bar # 2109280004)
Doug Davison, *Pro Hac Vice*
601 13th St. NW #400
Washington, D.C. 20005
(202) 654-9200
adam.lurie@linklaters.com
doug.davison@linklaters.com

Douglas M. Tween, *Pro Hac Vice*
Nicole E. Jerry, *Pro Hac Vice*
Charlene Valdez Warner, *Pro Hac Vice*
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
douglas.tween@linklaters.com
nicole.jerry@linklaters.com
charlene.warner@linklaters.com

*Attorneys for Defendant Nader Pourhassan*