IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. NADER POURHASSAN and KAZEM KAZEMPOUR, Defendants. | Docket Number 8:22-cr-00440-PX |

**JURY TRIAL - VOLUME I**
BEFORE THE HONORABLE PAULA XINIS
UNITED STATES DISTRICT COURT JUDGE
MONDAY, NOVEMBER 4, 2024, AT 9:00 A.M.

APPEARANCES:

On Behalf of the Plaintiff:

BY: LAUREN ARCHER, ESQUIRE
MATTHEW REILLY, ESQUIRE
VASANTH SRIDHARAN, ESQUIRE
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue NW
Washington, DC 20005
(202)538-3859

BY: ADEYEMI ADENRELE, ESQUIRE
U.S. ATTORNEYS OFFICE
36 S. Charles Street
Baltimore, MD 21201
(410)209-4800

(APPEARANCES CONTINUED)

**COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

CONTINUED APPEARANCES:

On Behalf of Defendant Nader Pourhassan:

BY: ADAM LURIE, ESQUIRE
LINKLATERS, LLP
601 Thirteenth Street NW, Suite 400
Washington, DC 20006
(202)654-9227

BY: DOUGLAS TWEEN, ESQUIRE
CHARLENE WARNER, ESQUIRE
NICOLE JERRY, ESQUIRE
LINKLATERS, LLP
1290 Avenue of the America
New York, NY 10104
(917)588-9852

On Behalf of Defendant Kazem Kazempour:

BY: BENJAMIN O'NEIL, ESQUIRE
CAROLINE BURTON, ESQUIRE
JASON COWLEY, ESQUIRE
McGUIRE WOODS, LLP
888 16th Street NW
Black Lives Matter Plaza
Suite 500
Washington, DC 20006
(202)828-2966

ALSO PRESENT: Daniel Parker, Special Agent FBI
Nader Pourhassan, Defendant
Kazem Kazempour, Defendant

P R O C E E D I N G S

(Court called to order.)

**DEPUTY CLERK:** All rise. The United States District Court for the District of Maryland is now in session. The Honorable Paula Xinis presiding.

**THE COURT:** Good morning, everyone. Government, call the case.

**MS. ARCHER:** United States v. Nader Pourhassan and Kazem Kazempour, Case Number PX-22-440. On behalf of the United States, Lauren Archer, Matthew Reilly, Vasanth Sridharan, and Adeyemi Adenrele. With us at the counsel table is FBI Special Agent Daniel Parker.

**THE COURT:** Okay. Thank you.

**MR. LURIE:** Good morning, Your Honor. Adam Lurie for Dr. Pourhassan. To my left is Dr. Pourhassan, Nicole Jerry, Doug Tween, and Charlene Warner, Your Honor.

**THE COURT:** Good morning.

**MR. O'NEIL:** Good morning, Your Honor. For Dr. Kazempour it's myself, Ben O'Neil, Jason Cowley, and Caroline Burton.

**THE COURT:** Good morning. You all can have a seat.

Everyone, we have a number of things to knock out before the jury. The jury will be here at 9:30 sharp. We have another jury trial going on in this court, and we need to make sure this one goes first because we are getting this jury in

the box one way or another before we all leave today. So I'm going to move relatively quickly through all the issues that you have raised since the last time we saw one another.

First is, you asked whether we could extend the time, the jury -- jury days. And I'm willing to go to 3:45, and that's it. So we're just going to have to be efficient. And if I sense games -- and I don't mean that in a -- you know what I'm saying? If I sense that there's -- you're walking the dog with witnesses or it's not going as efficiently, I'll jump in and I will deal with it because I expect that this case is to be tried efficiently and well for this jury.

And the whole promise behind asking them to come early is that they get to go home before the rush hour. So we'll go to 3:45 with the three breaks that we discussed. And I'll explain that to them in the voir dire.

You have the voir dire, and I've gone over with you how we're going to handle jury selection. The one change that I'm going to make -- or not change, really, but it's just an addition for the jurors for their convenience is I've taken the witness list, or the prospective witness list; I've combined them; I've put them in alphabetical order. We have something like 53 names on there. So I'm not only going to read them out loud, but I'm going to give the jurors a list. So while they are listening to the names, they can look at it.

I'm going to instruct them not to make any marks on the

list. If they have any notes to make, make it on the voir dire sheet itself. And then we'll collect it all. And then I'll have this for follow-up voir dire, have the list in front of them; so it will just cut down on a lot of confusion later.

So that's that.

I have a number of letters from you all. Let me deal with, I think, the thorniest one first, which is the one I'm, frankly, going to punt, and that is the question of e-mails and your responses -- which I understand -- to my salvo, that, listen, we're going to try this case based on witnesses' personal knowledge; we're not trying it by e-mails. That was sort of a 3,000-foot view.

I understand that you may be, for particular witnesses, for particular reasons that are grounded in the rules of evidence, going to be asking me to do otherwise.

As long as you are ready to go with the rules and the foundation and you -- you're on point, I'm going to let you do it. I'm not here to monkey with the rules of evidence. I just can't go through each of these examples in a vacuum and tell you yes or no. But I appreciate the education. And so that's where we are with e-mails.

And I believe that was -- let's see. That looked to be -- to me to be -- 230 and 231 were the two letters that dealt with e-mails. And I'll keep them handy.

234 is Dr. Pourhassan's letter regarding permitting

questioning and argument about the extent or lack thereof of the government's investigation allowing Mr. -- Dr. Pourhassan's wife and family in the courtroom, and leading questions on cross-examination beyond the scope.

As to Number 1, it's my practice, I let the defense get into what the government did and didn't do. It's fair. It's fair game. Government should expect it.

But like everything, right, there are limits. So be judicious with it, no pun intended. I guess that's my role. But, sure, you're going to be able to do that. So -- so that, I hope, gives you enough guidance for Number 1 and for both defendants.

Number 2, I've considered the question of Dr. Pourhassan's family, and I will allow them in the courtroom because I'm taking your proffer, Mr. Lurie, that they're not fact witnesses. At best, maybe, they will be character witnesses, and that's a much more limited scope.

Am I right about that?

**MR. LURIE:** Yes, Your Honor, with -- I'm not sure which bucket you put it in. The one other area that we highlighted was, to the extent it becomes relevant -- and I'm not sure it will -- Dr. Pourhassan's wife can just talk about what she has seen, the personal commitment that Dr. Pourhassan has put into the company.

**THE COURT:** If it becomes relevant.

**MR. LURIE:** Yes, Your Honor.

**THE COURT:** Okay. But I don't -- I don't see it relevant in the -- sort of in the ordinary -- like today, I don't see the direct relevance to this case. But not getting into an argument with you now about it. We'll see how the case goes.

But to your point, that it is a fair request to allow family members to be here to support, and with the understanding that the government can cross-examine if you call any of the family as character witnesses on their presence in the courtroom and any other observations you make in that regard, I'll allow it.

**MR. LURIE:** Thank you, Your Honor.

**THE COURT:** So that's Number 2. So 3, leading questions on cross-examination that go beyond the scope of direct.

So I understand that you may be asking to examine a witness for your case essentially out of order because the witness is on the stand. And I think the rules will apply consistently, which means if you were to have recalled the witness and the witness -- you demonstrate that the witness is adverse under the rules to the government, then you'll be permitted to ask leading questions. And if the government convinces me they are not adverse, then you won't.

But I mean, really, this is something that we shouldn't be

fighting -- the parties should not be fighting about right now. If the government is calling a witness aligned with the prosecution, whether it be -- and in this case, it may be FDA; it may be -- we'll see how the case comes in, but I shouldn't be hearing extensive argument about whether this witness is adverse and, on cross, whether you should be allowed, defense, to ask some leading questions.

But, you know, we'll play that one by ear as to the global point. Though, yes, you will -- I want this case to go efficiently; we need it to go efficiently; so you will be permitted to go into your case and ask leading questions if the witness is adverse.

Do you know -- just so that I'm sort of aware of it, do you know which witness this may come up with first?

**MR. LURIE:** Thank you, Your Honor. No, we don't have the government's order of witnesses for the first week yet, but we do have witnesses in mind where this may come up for Dr. Pourhassan.

**THE COURT:** Okay. Did I -- was I mistaken that the first week's witnesses -- the first week's witnesses are given today or Friday?

**MR. SRIDHARAN:** Today.

**THE COURT:** Today. Okay. So when we get together Monday morning -- Wednesday morning before the case starts, please let me know which witnesses you expect to exceed the

scope of direct.

**MR. LURIE:** Very well, Your Honor. Thank you.

**THE COURT:** Okay. Great.

I think that handles 234.

233 is with respect to disclosing the subpoena itself for CytoDyn, Amarex, and the parent company of Amarex, NSF; and the government is objecting. Why? And really quickly, I want know what's the big deal with turning over the actual subpoena since you've turned over the documents?

**MR. ADENRELE:** Just very quickly, Your Honor, the cases law seems really clear on this --

**THE COURT:** You didn't give me any case law, did you?

**MR. ADENRELE:** I'm going to cite the case right now.

**THE COURT:** That's hard for me because you didn't give it to me overnight when I'm reading all this stuff.

The case that I want is the one that is directly on point saying I am prohibited from ordering the government to disclose it as a Rule 16 matter when the defense may be, the government picked and chose what they requested through the grand jury subpoena process.

You see what I'm saying? So give me the best case.

**MR. ADENRELE:** Absolutely. US v. Donohue. It's 574 F Supp. 1263 from our district here. It essentially identifies that, really, there's a balancing test that has to happen here -- the importance of the secrecy of the grand jury

proceedings under 6(e) versus a particularized need identified by the defense.

The importance of the secrecy here is -- is severalfold, that the grand jury subpoenas themselves will have the names of witnesses who have come before the grand jury, addresses, dates or proposed grand jury testimony, categories of topics that the government believe they may have information about time periods.

**THE COURT:** Wait a minute. Documents, subpoenas to the corporations? Isn't that what the defense is asking for?

**MR. COWLEY:** That's exactly right, Your Honor. We're asking for document subpoenas that was sent to Amarex; its parent company, NSF; and CytoDyn. That's it.

**THE COURT:** So why would there be witness names and addresses and identifiers in that?

**MR. ADENRELE:** My understanding is that they were asking for all of the grand jury subpoenas and then, as a priority matter, identifying maybe a small sliver.

**THE COURT:** That's what's before me. So please address what today in the next ten minutes is before me, and that's the document subpoenas for Amarex, CytoDyn, and NSF. That's it.

**MR. ADENRELE:** Absolutely, Your Honor. Essentially, they don't have a particularized need for that stuff. Their argument is essentially that it will help them prove that

there's a lack of incriminating documents in this case. They have all the documents.

**THE COURT:** No, that's not their argument. That's not their argument. Their argument is it's going to help them -- it may; it doesn't have to -- but it may help them examine government witnesses as to the lack of investigation. That's how I'm seeing it.

**MR. ADENRELE:** Your Honor, that's, you know, my understanding, their first argument they made.

Now, their second argument absolutely is about crossing Agent Parker. But the first argument they made is, in fact, they plan to use the subpoenas to help them prove there's a lack of incriminating evidence in this case.

And by having all the documents, which they already have, the subpoenas can't help them do that any further. There's millions of pages of documents that were produced in this case. They can look at the documents and identify what is and what isn't there. And that, in and of itself, should allow them to be able to make the argument they'd like to make.

But beyond that, if they'd like to present these subpoenas -- first of all, beyond disclosing the subpoenas, which I don't think there's any argument that they are, in fact, 6(e) secret material of the grand jury, they haven't made that argument, and I don't think that's in dispute here.

But if their plan is to use subpoenas to cross

Agent Parker, use the subpoena itself, that seems to not only say that they want the government to disclose the subpoenas to them but further disclose them to the jury.

**THE COURT:** Maybe, maybe not. No, Rule 16 is different. Rule 16 is about giving the relevant and probative information to help the defense prepare their defense. It does not mean that those are getting admitted; it just means that they need to know the fact of.

**MR. ADENRELE:** And, Your Honor, I'm just going off what they have written in their motion, and what they --

**THE COURT:** I'm telling you where I am with it --

**MR. ADENRELE:** Absolutely.

**THE COURT:** -- which is Rule 16 is not a green light for admissibility. It's about what's material to the preparation of the defense. So it's going to be a separate question whether any of this sees the light of day at the trial.

I'm just trying to wrap my brain around what's the big deal, frankly, because the grand jury has -- they've been indicted. There's a superseding. You've given over all the documents. This can be under a protective order, for attorneys' eyes only, however you wish to limit the disclosure. It's not for public consumption.

And as far as I see it -- defense, you tell me if I'm wrong -- this may go to a question or two of the agents about

what they asked for, what they didn't ask for; what they asked for, what they got.

**MR. COWLEY:** Correct, Your Honor. I mean, everything you're saying, we completely agree with. Our request is limited. We articulated specific reasons, one of which is to cross Agent Parker with respect to the scope of what was asked for and what was not asked for. And that is relevant for two different ways.

One is to attack the investigation, as you said, was appropriate; and, two, it's to establish that, in a world where there are no incriminating documents, you know, which is our -- which is our view, that it's not because they didn't ask for them. Like, they sent compulsory process to these three companies; they produced responsive documents; these are the categories they asked for; and here's what we've got.

Those two reasons are particularly legitimate, particularly when we're talking about this is a discovery request. We can have a whole other conversation about admissibility, whatever. But here, the material -- they are material to prepare for our defense, and they are not secret. We know they exist. Everybody knows they exist. The indictment has been returned. There's nothing -- there's nothing prohibiting them from producing pursuant to Rule 16, especially when there's a protective order in place.

**THE COURT:** Any response to that?

**MR. ADENRELE:** Yeah, Your Honor. They have the cover letters for these subpoenas. They were exercised. And so if Your Honor is inclined to -- or order the government to produce these subpoenas, we would just ask that we receive the highest level of confidentiality of these subpoenas. There are names of individuals from our office on that subpoena. There are e-mail addresses.

**THE COURT:** I don't understand. Names of individuals. What do you mean?

**MR. ADENRELE:** So in the attachments of these subpoenas -- this is standard for our office -- it would include the returns can go back to the agents as well as paralegals in our office, including their e-mail addresses. We would ask to be able to redact some of those names.

**THE COURT:** Not the agents because the agents may testify.

**MR. ADENRELE:** Not the agents. Absolutely, Your Honor. I just mean individuals in our office who have nothing -- couldn't be called as witnesses in this case and have really nothing to do with the case. They're just doing their daily jobs.

**THE COURT:** Any problem with that, defense?

**MR. COWLEY:** No, Your Honor.

**MR. ADENRELE:** Just one last thing, Your Honor. I just want to confirm, is it true that the subpoenas that you

may be ordering us to produce here is limited to those going to Amarex, NSF, and CytoDyn?

**THE COURT:** That's correct. It's only what they've asked for -- documents, request for documents. No witnesses and nothing -- nothing beyond those three companies. And whatever you do disclose, because I am going to find it even under United States v. Donohue -- that was the case you gave me?

**MR. ADENRELE:** That's correct, Your Honor.

**THE COURT:** An old chestnut you gave me. 1983.

**MR. ADENRELE:** It is an old case. As you can imagine, this issue does not get disputed or come up very often.

**THE COURT:** Right. Because it's my understanding, and I have to tell you it's been my experience, that the subpoena itself -- I mean, I've experienced where it has been turned over. It doesn't get used necessarily, but it gives the defense the scope of what was asked for.

So it really does blunt often the very criticism that, you know, the defense is -- is getting ready to make. I mean, if you asked for everything, then you did your part as the investigators.

So I'm just perplexed as to why this was an issue. Maybe it was the breadth in the beginning.

**MR. ADENRELE:** Certainly was the breadth in the

beginning, and it didn't seem like they made a clear line that this would be the end of their request. That certainly was an issue.

I never have been asked or produced the subpoenas and attachments before; and so this was an absolutely new request for me, one that I've not seen before or heard of before, to be honest with you.

**THE COURT:** Well, I would assume that's probably happened a lot in this case. I mean, this case is unique. Right? And as long as I make the proper findings and you -- you disclose it under a protective order, then Donohue has been met.

Am I getting that right?

**MR. ADENRELE:** I certainly will comply with the judge's orders if the judge so decides.

**THE COURT:** Okay. All right. Well, so as I read Donohue -- and I don't think it's quoting Dennis; Dennis was given to me by the defense -- to the extent there is -- these subpoenas, which are limited, only three, the corporate -- the source of the information is the three corporations who are squarely at issue in the case. These are not satellite subpoenas, if you will. I haven't been asked about any others. I don't expect to hear about any others. We're at the first day of trial.

Am I right about that?

**MR. COWLEY:** This is our request now. I can't predict what may come up in the future. But --

**THE COURT:** Do you have any -- well, you should know by now if there's going to be any others. I don't want it to be a slippery slope.

**MR. COWLEY:** I'm not -- right now, we have no intention of asking for any others, Your Honor.

**THE COURT:** Okay. So let's just focus on these -- these document subpoenas.

Certainly Rule 60 of the Federal Rules of Criminal Procedure do contemplate protecting grand jury secrecy. But as Donohue makes clear, once the case has been indicted, the -- the interest in secrecy are not eliminated, but they're certainly reduced; and that when there is a showing of a particularized need, then I can, in my discretion, order disclosure. And I'm going to do that under very -- under tight circumstances which both meet the definition and meet the requirements of Rule 16 but also protect the secrecy of the process.

So the particularized need that I find to be most persuasive here is that the government wants to -- I mean, the defense wants to check the government's work in terms of the nature and the extent of the investigation, and the only way to do that is to compare what was asked for with what was received and that's a very basic proposition. It may or may not result

in questions of the government witnesses about that. I don't anticipate the subpoena itself is going to be introduced as admissible evidence, but we'll cross that bridge when we get to it.

As a matter of Rule 16 relevance, though, in aiding the preparation of the defense, I do find it is relevant and, with the following guardrails, is disclosable.

So the subpoenas shall be disclosed under the protective order, which means they will not be seen by anybody else but the defense.

Am I right about that? That's how the protective order is working in this case, correct?

**MR. COWLEY:** I think that's right. If there's any dispute, we'll confer with the government.

**THE COURT:** Right. If you're intending, before you do it, to use these documents with anyone outside of the defense team or Dr. Kazempour -- and I include Dr. Pourhassan in this -- you let the government know.

**MR. COWLEY:** Yes, Your Honor.

**THE COURT:** All right. So I'm going to grant that request under those conditions and pursuant to United States v. Donohue. Okay?

Anything else that we have to do before we're ready for our jury?

**MR. O'NEIL:** Judge, I don't know whether you want to

do it now, but do we have any plea discussions?

**THE COURT:** Yes, that's exactly right. Mr. Ulander just mentioned to me.

And for ease, let me just ask the parties, for voir dire -- I have a lot of folks in the courtroom right now. It gets real dicey for voir dire when we have 75 jurors who we're trying to make comfortable.

Is there going to be any objection to asking those folks who are aligned with either of the parties to not be present in the courtroom during voir dire? Just because it's just tight. And we're only going to be doing the first round of questions in open court, and then we're going to move to the jury room anyway for follow-up voir dire.

Any issue with just asking folks to give us the room, more than anything else?

**MS. ARCHER:** No objection from the government.

**MR. LURIE:** Your Honor, none for us either. If it's possible to have Dr. Pourhassan's wife in the room, if there's space for that, we would appreciate that. If it's really not feasible, we understand that.

**THE COURT:** I'm going to let Mr. Ulander try to figure that out because it may not be. I'm not trying to be difficult about it. It's just sitting 75 jurors comfortably is tough. So we might have to ask that you give us that breathing room.

**MR. LURIE:** Yes.

**MR. SRIDHARAN:** Your Honor, before we pivot to plea discussions, I had one -- we noticed one thing about the voir dire last night.

**THE COURT:** Sure.

**MR. SRIDHARAN:** Question 36 is a question that says, "Were you born in the United States?"

And I think the way -- general understanding I have of how Your Honor does this is that for "no" responses, there's no follow-up.

**THE COURT:** I saw that. If we're going to have a yes on 26, it's not going to lead to any follow-up.

**MR. SRIDHARAN:** I just wanted to make sure.

**THE COURT:** Right, I saw that. And I just anticipated that very thing. As long as we got a yes for 36 -- it's agnostic. Right? It just gives you information --

**MR. SRIDHARAN:** I think on either one, it doesn't require a follow-up on its own.

**THE COURT:** Correct.

**MR. SRIDHARAN:** I just wanted to clarify the issue.

**THE COURT:** Correct. Yep. And I'm sure there's not -- that's sort of like basic.

Okay. Very good. So let me start with Dr. Pourhassan.

Good morning, sir.

**DEFENDANT POURHASSAN:** Good morning.

**THE COURT:** And you don't need to stand. You can sit if you're more comfortable.

I just want to make sure, sir, that you've had enough time to speak with your counsel about the following things:

First, from counsel, let me know, have all formal plea offers, written plea offers from the government, been reviewed with Dr. Pourhassan?

**MR. LURIE:** Yes, Your Honor.

**THE COURT:** Okay. And, Dr. Pourhassan, have you had enough time to go over with your counsel those offers?

**DEFENDANT POURHASSAN:** Yes, Your Honor, I have.

**THE COURT:** Okay. And it's my understanding that you've rejected those offers and you wish to go to trial today, which is your absolute right. Is that correct?

**DEFENDANT POURHASSAN:** That's correct, Your Honor.

**THE COURT:** Okay. Do you have any hesitation or any question about that?

**DEFENDANT POURHASSAN:** Absolutely not, Your Honor.

**THE COURT:** Do you need any more time with your counsel?

**DEFENDANT POURHASSAN:** No, I don't.

**THE COURT:** Okay. Thank you.

Dr. Kazempour -- and, again, you can sit if you're more comfortable.

**DEFENDANT POURHASSAN:** Thank you.

**THE COURT:** I'm going to ask you the same questions. First, I'm going to start with your lawyers.

Have all formal written plea offers been communicated to Dr. Kazempour?

**MR. O'NEIL:** They have, Your Honor.

**THE COURT:** Okay.

Dr. Kazempour, have you had enough time to review those offers with your counsel?

**DEFENDANT KAZEMPOUR:** Yes, Your Honor.

**THE COURT:** Okay. And do you wish to go forward instead of accepting those offers, go forward with trial?

**DEFENDANT KAZEMPOUR:** Yes, I would like to go forward with the trial.

**THE COURT:** And do you have -- do you need any more time with your lawyers on that?

**DEFENDANT KAZEMPOUR:** Thank you for asking that.

No, Your Honor.

**THE COURT:** Okay. Do you have any hesitation or reservation about that?

**DEFENDANT KAZEMPOUR:** Thank you for asking.

Absolutely no, Your Honor.

**THE COURT:** Okay. All right.

Anything else that either side wishes for me to voir dire on this topic?

**MS. ARCHER:** No, Your Honor.

**MR. LURIE:** No, Your Honor.

**MR. O'NEIL:** Nope.

**THE COURT:** Okay. Very good. And with five minutes to spare.

Anything else before we check in on our jury?

**MR. LURIE:** No, Your Honor.

**THE COURT:** All right. Very good.

**DEPUTY CLERK:** Your Honor, our jurors are currently being lined up as we speak, and they will be brought up in the next few minutes. Obviously, it takes a little bit to move 75 around. So we'll be a few minutes.

**THE COURT:** Okay. Very good.

We have a couple of minutes. So if anyone needs a comfort break, let's do that now. All right. Thank you.

**DEPUTY CLERK:** All rise. This Honorable Court now stands in recess.

(Recess taken at 9:26 a.m. until 9:43 a.m.)

**THE COURT:** Hi everyone. My understanding is that Mr. Ulander is lining everybody up and handing out clipboards; so we are very close to getting ready to go. So I thought I would just come on out.

**DEPUTY CLERK:** Your Honor, Mr. Cook is just doing the very last roll call, making sure everybody is in order. They all have their materials. And then we'll be ready to start.

**THE COURT:** While we wait, Counsel, did you all get

the list in print as well?

Okay. Let me know if I've left anything out.

**MR. O'NEIL:** Oh, the witness list?

**THE COURT:** Yes, the potential witness list.

**MR. O'NEIL:** I don't think so, Your Honor.

**THE COURT:** Let me try to get you copies.

Could I have six copies of the printed list.

**MR. O'NEIL:** Judge, one question.

So, obviously, there's counsel that's at the table, but there's other lawyers who will be in the courtroom who are working on the case.

**THE COURT:** Uh-huh.

**MR. O'NEIL:** I guess it probably makes sense to inquire as to whether the jurors know any of those individuals as well.

**DEPUTY CLERK:** All rise for the jury.

**THE COURT:** Mr. O'Neil, write them down for everyone if you could.

(Jury voir dire recorded stenographically and is under separate cover.)

**THE COURT:** All right, everyone. For those of you who have been selected, I know it's been a very long day. So I'm going to run through some important preliminary instructions for you; so just a little more. I'll just explain what we're doing, and then we'll do that.

So I'm going to give you some preliminary instructions, just a little more attention to be paid. Mr. Ulander will swear you in first. Then he'll show you the back of the jury room and where you'll be coming in, what door you'll be coming in and out of every day, because it won't be the front door of the courthouse -- or the courtroom, and where everything is in the back.

We will not meet tomorrow. We will see each other Wednesday morning. If you're here 8:40 sharp, we will get rolling by 8:45, and it will guarantee that you're out by 3:30, 3:45 so you can beat the rush hour.

Mr. Ulander.

(Jury sworn.)

**DEPUTY CLERK:** Jury's sworn, Your Honor.

**THE COURT:** Okay. Thank you all. You can all have a seat.

All right. So here are your preliminary instructions:

This case, as we talked about, is a criminal case against two defendants: Nader Pourhassan and Kazem Kazempour.

Nader Pourhassan is charged by indictment with conspiracy to commit securities fraud, conspiracy to commit wire fraud, securities fraud, wire fraud, and insider training.

Kazem Kazempour is charged with conspiracy to commit securities fraud, conspiracy to commit wire fraud, securities fraud, wire fraud, and making a false statement.

Both defendants deny all charges.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts -- to those facts the law as I will instruct you.

You must follow that law whether you agree with it or not. Nothing that I may say or do during the course of the trial is intended to indicate nor should be taken by you as indicating what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of witnesses, documents and other things received into the record as exhibits, and any facts that the lawyers agree to stipulate to or things that I may instruct you to find.

Certain things are not evidence and not -- must not be considered by you, and I'm going to list them for you now.

Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it.

If the objection is sustained, ignore the question.

If it is overruled, treat the answer like any other.

If you are instructed by me that some of the -- some item of evidence is received for a limited purpose only, you must

follow that instruction.

Testimony that I've excluded or told you to disregard is not evidence and must not be considered.

Anything that you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in this courtroom.

Now, there are two kinds of evidence -- direct and circumstantial.

Direct evidence is as the name suggests, direct proof of a fact such as testimony of an eyewitness.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.

I'll give you further instruction on these as well as other matters of the case, but keep in mind that you may consider both kinds of evidence.

And it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of a witness's testimony to accept or reject. I'll give you some guidelines for determining the credibility of the witnesses at the end of the case.

Now, as you know, this is a criminal case, and there are three basic rules about a criminal case that you must keep in mind.

First, the defendants are presumed innocent. The

indictment brought by the government against the defendant is only an accusation, nothing more. It is not proof of guilt or anything else. The defendants therefore start out with a clean slate.

Second, the burden of proof is on the government until the very end of the case. The defendants have no burden to prove innocence or to present any evidence or to testify.

Since the defendants have the right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendants may not have testified.

Third, the government must prove the defendants' guilt beyond a reasonable doubt. I'll give you further instructions on this point later, but bear in mind that, in this respect, a criminal case is different from a civil case.

Now, a few words about your conduct as jurors.

You as jurors must decide the case based solely on the evidence presented here within the four walls of this courtroom. This means that, from now until we meet again and during the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case.

In other words, you should not consult dictionaries or reference materials or search the internet, social media, or websites or blogs or use any other electronic tools to obtain information about the case or to help you decide the case.

Please do not try to find out any information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss the case with anyone, even your fellow jurors, even with each other.

After you retire to deliberate, you may begin discussing the case with your fellow jurors but only once I tell you you can begin deliberations. And you cannot discuss the case with anyone else until you've returned a verdict and the case is at an end.

Now, I know many of you use cell phones and smart phones, iPhones, BlackBerrys, or other personal devices, use the internet, on social media, and you take advantage of many of the tools of technology. Well, you simply may not use them during the trial in any way related to the case.

You also must not talk to anyone at any time about the case or use these tools to communicate electronically with anyone about the case. This includes your family and your friends.

You may not communicate with anyone about the case on your cell phone, through e-mail, BlackBerry, iPhone, text messaging, on Twitter, or through any blog or website, including Facebook, Instagram, Snapchat, Google, Myspace, LinkedIn, or YouTube. I think you get the point.

You may not use any similar technology or social media,

even if I haven't specifically mentioned it here.

I expect you to inform me as soon as you become aware of another juror's violation of these instructions. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result, which would require the entire trial process to start over.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

Now, if you want to take notes during the course of the trial, you may do so on the notepads provided to you by Mr. Ulander, and you should have them in your folder right now.

However, it may be difficult to take detailed notes and pay attention to what the witnesses are saying at the same time.

So if you do take notes, be sure that your note-taking does not interfere with your listening and considering all of the evidence. Also, if you do take notes, do not discuss the notes with anyone before you begin your deliberations.

You may not take your notes home with you at the end of the day or at the end of trial. You must leave them in the jury room at the end of each day and at the end of the trial. And Mr. Ulander will give you more instructions about that. Usually, we just ask you to leave them on your chair.

If you choose not to take notes, remember that it is your

own individual responsibility to listen carefully to the evidence. You cannot give this responsibility to someone else who is taking notes. Our system depends on the judgment of all the members of the jury; so you all must remember the evidence in this case.

Now, trial will begin each morning at 8:45 and end around 3:45. And I'm not going to keep you much past that because my promise to you is you get on the road before the traffic gets bad.

When you come on Wednesday morning, we will first hear from government counsel, who will make an opening statement.

Now, an opening statement is simply an outline to help you understand the evidence as it comes in.

Next, the defendants' attorneys may -- but they do not have to -- make an opening statement.

Opening statements are not evidence, and they are not permitted to be arguments either.

The government will then present its witnesses, and counsel for the defendants may cross-examine them.

Following the government's case, the defendants may, if they wish, present witnesses whom the government may cross-examine.

After all the evidence is in, I will instruct you on the law, and then the attorneys will present their closing arguments to summarize and interpret the evidence for you.

After that, you'll retire to deliberate on your verdict. That will not all happen tomorrow, but that's the over -- sort of the overview of the case. Okay?

Those are my formal instructions to you. A couple parting thoughts.

This case is going to go on for several days. As you come and go, you may see some of the lawyers or the defendants in the hallway or in the stairs. If they don't say hello to you or make sort of a nice chat with you, it's because I told them they can't. They are absolutely prohibited. So they're not being rude; they're just following the Court's orders. Okay?

All right. Do you have any questions for me before you get to go home?

**A JUROR:** So when you say that we're going to meet several days, so do we know already what it's going to be?

**THE COURT:** Yes, I can give them to you. So this week, we're not going to sit tomorrow; but we will sit Wednesday, Thursday, Friday.

Next week, we do not sit on Monday -- that's a holiday -- but we will sit the rest of the week. So that's week two.

And then the third week is beginning on the 18th. And I believe -- counsel, correct me if I'm wrong -- that we have a full week Monday through Friday of that week. Am I right about that?

**MR. COWLEY:** That's right, Your Honor.

**MR. LURIE:** Yes, Your Honor.

**THE COURT:** And the hope is by the end of that week, the case will be either close to going to you or close so that you have time to deliberate and -- before the Thanksgiving holidays, which start the 28th. Okay?

All right. Good question.

Anything else?

What's that?

**A JUROR:** It says alternate juror. What's our --

**THE COURT:** Alternates are the same thing. So, alternates, you are just like the jurors who have been picked because, at any point if we lose a juror for whatever reason, you all have to step in. So you treat this case just like you're a juror who will deliberate. So all of these instructions apply to you, coming to court applies to you, and that's your particular folder. Okay?

Yes?

**A JUROR:** A follow-up question for work purposes. I know we got the little sheet that said we were here today.

**THE COURT:** Yep.

**A JUROR:** Are we going to get one every single day or just at the end of trial?

**DEPUTY CLERK:** I can address that, Your Honor, in the back with the jurors.

**THE COURT:** Okay. So you will get further

directions. We make sure that you have a letter for your employer that will last for the trial. Okay?

All right. Anything else?

**A JUROR:** I do have one question, and maybe it's a stupid question. But what if we have questions? I mean, what I experienced today is nothing like I've ever seen on television; so I'm not sure at all how this actually goes.

But what if somebody actually explains something on the stand and we might not completely understand what they are talking about? Do we just hold it until we get back to the jury room, or do we jot down a note? How does that process go if there's something that is being talked about and we don't understand?

**THE COURT:** What I'll do is, once you step out, I'm going to ask the lawyers for their views on it. This Court customarily does not take questions from the jurors. Part of it is because, as the case unfolds, things that you have questions about get answered.

And part of it is because your thought process is yours, and your deliberations with the jury, they're private and they're secret.

So we'll raise that, but chances are we're not going to take questions from the jurors as things go because -- because you'll -- you're entitled to just hear all the evidence and see -- and deliberate amongst yourselves.

Does that make sense?

**A JUROR:** Yes.

**THE COURT:** Okay. Very good.

Anything else?

So every night before you go home, you're going to hear me say the same thing, and so I'm going to start now.

Between now and tomorrow, no talking, no texting, no tweeting, no internetting, no Facebooking, no communication about the case with each other or anybody else whatsoever.

Go home, get some rest, and we'll see you back here 8:40 on Wednesday. And thank you so much for your service.

**DEPUTY CLERK:** All rise for the jury.

(The jury exited the courtroom at 6:52 p.m., and the following proceedings were had out of the presence of the jury.)

**THE COURT:** Okay, everyone. You can have a seat.

It is my practice not to take juror questions. Anyone want to be heard on that?

**MS. ARCHER:** We agree.

**THE COURT:** Okay.

Anyone from defense?

**MR. LURIE:** No, Your Honor.

**MR. COWLEY:** No, Your Honor.

**THE COURT:** All right. Anything that we have to talk about before we break until Wednesday morning?

**MR. COWLEY:** The government's anticipated witness list for the week, Your Honor.

**THE COURT:** You got that for the defense?

**MS. ARCHER:** We do. Would you like us to e-mail it, or do you want us to say it on the record?

**THE COURT:** You may as well say it on the record so I know it too.

**MS. ARCHER:** Sure.

So our first witness will be Deborah Oremland. Our second witness will be Kimberly Struble.

Now, here we have a little bit of -- we're hoping for some flexibility in terms of just the sequencing of the next few. We have some that are traveling and some that are local.

But in no particular order, we expect to call this week David Horvath, Anthony Caracciolo, Wei Kang, and Daniel Parker.

And of course that's with the understanding that we will have someone here at all times ready to go. We may not get to everyone this week.

**THE COURT:** So you have seven witnesses?

**MS. ARCHER:** Right. Understanding that we may not get to all seven.

**THE COURT:** Okay. So in the -- Wednesday morning --

**MS. ARCHER:** I'm sorry. Six.

**THE COURT:** Six. Okay.

And I know I probably asked you all, but length of

opening?

**MS. ARCHER:** For the government, it's 30 minutes maximum.

**THE COURT:** Okay.

Same with defense? 30 each?

**MR. TWEEN:** 30-ish. 30-ish for us.

**MR. COWLEY:** Close to 30.

**THE COURT:** All right. So we got an hour and a half of openings.

Okay. Just make sure, if you run out of witnesses, get some more, and give the -- give the defense a heads-up that they're coming.

**MS. ARCHER:** Absolutely.

**THE COURT:** All right. Anything else before we finally get to go home, get some rest?

**MS. ARCHER:** No. Thank you.

**THE COURT:** All right. Thank you all. I appreciate it. See you Wednesday.

(Proceedings were concluded at 6:55 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Paula J. Leeper, Federal Official Court Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 4th day of November 2024.

*/S/ Paula J. Leeper*

____________________

Paula J. Leeper, RPR, CRR
Federal Official Reporter

**A JUROR: [6]** 32/14 33/9 33/18 33/21 34/4 35/2
**DEFENDANT KAZEMPOUR: [4]** 22/9 22/12 23/14 24/20
**DEFENDANT POURHASSAN: [6]** 20/25 21/11 21/15 21/18 21/21 21/25
**DEPUTY CLERK: [8]** 3/3 23/8 23/15 23/22 24/16 25/14 33/23 35/12
**MR. ADENRELE: [16]** 9/10 9/13 9/22 10/16 10/23 11/8 12/9 12/12 14/1 14/10 14/17 14/24 15/9 15/11 15/25 16/14
**MR. COWLEY: [11]** 10/11 13/3 14/23 17/1 17/6 18/13 18/19 32/25 35/23 36/1 37/7
**MR. LURIE: [13]** 3/14 6/19 7/1 7/13 8/15 9/2 19/17 20/1 21/8 23/1 23/6 33/1 35/22
**MR. O'NEIL: [8]** 3/18 18/25 22/5 23/2 24/3 24/5 24/8 24/13
**MR. SRIDHARAN: [6]** 8/22 20/2 20/6 20/13 20/17 20/20
**MR. TWEEN: [1]** 37/6
**MS. ARCHER: [11]** 3/8 19/16 22/25 35/19 36/4 36/8 36/20 36/23 37/2 37/13 37/16
**THE COURT: [81]**

**-**

**-- which [1]** 12/13

**/**

**/S [1]** 38/15

**1**

**10104 [1]** 2/8
**1263 [1]** 9/23
**1290 [1]** 2/8
**1400 [1]** 1/16
**16 [7]** 9/18 12/4 12/5 12/13 13/23 17/18 18/5
**16th [1]** 2/13
**18th [1]** 32/21
**1983 [1]** 15/10

**2**

**20005 [1]** 1/17
**20006 [2]** 2/4 2/14
**202 [3]** 1/17 2/5 2/15
**2024 [2]** 1/11 38/12
**209-4800 [1]** 1/20
**21201 [1]** 1/20
**230 [1]** 5/23
**231 [1]** 5/23
**233 [1]** 9/5
**234 [2]** 5/25 9/4
**26 [1]** 20/12
**28 [1]** 38/6
**28th [1]** 33/5
**2966 [1]** 2/15

**3**

**3,000-foot [1]** 5/12
**30 [3]** 37/2 37/5 37/7
**30-ish [2]** 37/6 37/6
**36 [3]** 1/19 20/6 20/15
**3859 [1]** 1/17
**3:30 [1]** 25/10
**3:45 [4]** 4/5 4/14 25/11 31/7

**4**

**400 [1]** 2/4
**410 [1]** 1/20
**440 [1]** 3/9
**4800 [1]** 1/20
**4th [1]** 38/12

**5**

**500 [1]** 2/14
**53 [1]** 4/22
**538-3859 [1]** 1/17
**574 F [1]** 9/23
**588-9852 [1]** 2/9

**6**

**60 [1]** 17/10
**601 [1]** 2/4
**654-9227 [1]** 2/5
**6:52 [1]** 35/13
**6:55 [1]** 37/19

**7**

**75 [3]** 19/6 19/23 23/10
**753 [1]** 38/6

**8**

**828-2966 [1]** 2/15
**888 [1]** 2/13
**8:22-cr-00440-PX [1]** 1/6
**8:40 [2]** 25/9 35/10
**8:45 [2]** 25/10 31/6

**9**

**917 [1]** 2/9
**9227 [1]** 2/5
**9852 [1]** 2/9
**9:00 [1]** 1/11
**9:26 [1]** 23/17
**9:30 [1]** 3/23
**9:43 [1]** 23/17

**A**

**a.m [3]** 1/11 23/17 23/17
**able [3]** 6/10 11/19 14/14
**above [1]** 38/9
**above-entitled [1]** 38/9
**absolute [1]** 21/14
**absolutely [10]** 9/22 10/23 11/10 12/12 14/17 16/5 21/18 22/21 32/10 37/13
**accept [1]** 27/19
**accepting [1]** 22/11
**accusation [1]** 28/2
**actual [1]** 9/8
**actually [2]** 34/7 34/8
**ADAM [2]** 2/3 3/14
**addition [1]** 4/19
**address [2]** 10/20 33/23
**addresses [4]** 10/5 10/15 14/7 14/13
**ADENRELE [2]** 1/18 3/11
**ADEYEMI [2]** 1/18 3/11
**admissibility [2]** 12/14 13/19
**admissible [1]** 18/3
**admitted [1]** 12/7
**advantage [1]** 29/13
**adverse [4]** 7/22 7/24 8/6 8/12
**After [3]** 29/6 31/23 32/1
**again [2]** 21/23 28/18
**against [2]** 25/18 28/1
**Agent [5]** 2/16 3/12 11/11 12/1 13/6
**Agent Parker [3]** 11/11 12/1 13/6
**agents [5]** 12/25 14/12 14/15 14/15 14/17
**agnostic [1]** 20/16
**agree [4]** 13/4 26/6 26/13 35/19
**AIDED [1]** 1/25
**aiding [1]** 18/5
**aligned [2]** 8/2 19/9
**all [50]**
**allow [4]** 6/14 7/7 7/12 11/18
**allowed [1]** 8/6
**allowing [1]** 6/2
**alone [1]** 26/3
**alphabetical [1]** 4/21
**already [2]** 11/14 32/15
**also [4]** 2/16 17/18 29/16 30/18
**alternate [1]** 33/9
**alternates [2]** 33/10 33/11
**am [8]** 6/18 9/17 12/11 15/6 16/13 16/25 18/11 32/23
**Amarex [5]** 9/6 9/6 10/12 10/21 15/2
**AMERICA [2]** 1/4 2/8
**amongst [1]** 34/25
**another [4]** 3/24 4/1 4/3 30/3
**answer [1]** 26/23
**answered [1]** 34/18
**Anthony [1]** 36/15
**anticipate [1]** 18/2
**anticipated [2]** 20/15 36/1
**anybody [2]** 18/9 35/9
**anyone [10]** 18/16 23/13 29/4 29/9 29/16 29/18 29/20 30/19 35/17 35/21
**anything [12]** 18/23 19/15 22/23 23/5 24/2 27/4 28/3 33/7 34/3 35/4 35/24 37/14
**anyway [1]** 19/13
**APPEARANCES [3]** 1/12 1/23 2/1
**applies [1]** 33/15
**apply [3]** 7/19 26/4 33/15
**appreciate [3]** 5/20 19/19 37/17
**appropriate [1]** 13/10
**ARCHER [2]** 1/14 3/10
**area [1]** 6/20
**argument [13]** 6/1 7/5 8/5 10/25 11/3 11/4 11/4 11/9 11/10 11/11 11/19 11/22 11/24
**arguments [2]** 31/17 31/25
**around [3]** 12/18 23/11 31/6
**arriving [1]** 28/9
**articulated [1]** 13/5
**ask [12]** 7/23 8/7 8/11 13/1 13/12 14/4 14/14 19/4 19/24 22/1 30/24 34/15
**asked [13]** 4/4 13/1 13/1 13/6 13/7 13/15 15/4 15/18 15/21 16/4 16/22 17/24 36/25
**asking [11]** 4/12 5/15 7/17 10/10 10/12 10/17 17/7 19/8 19/14 22/16 22/20
**assume [1]** 16/8
**attachments [2]** 14/10 16/5
**attack [1]** 13/9
**attention [2]** 25/2 30/14
**attorneys [3]** 1/19 31/14 31/24
**attorneys' [1]** 12/22
**Avenue [2]** 1/16 2/8
**aware [2]** 8/13 30/2

**B**

**back [6]** 14/12 25/3 25/7 33/24 34/10 35/10
**bad [1]** 31/9
**balancing [1]** 9/24
**Baltimore [1]** 1/20
**based [2]** 5/10 28/16
**basic [3]** 17/25 20/22 27/23
**bear [1]** 28/13
**beat [1]** 25/11
**because [20]** 3/25 4/10 6/14 7/18 9/14 12/19 13/12 14/15 15/6 15/14 19/10 19/22 25/5 31/7 32/9 33/12 34/17 34/19 34/23 34/23
**become [1]** 30/2
**becomes [2]** 6/21 6/25
**before [22]** 1/10 3/22 4/1 4/13 8/24 10/5 10/19 10/20 16/5 16/6 16/6 18/15 18/23 20/2 23/5 30/19 31/8 32/12 33/4 35/5 35/25 37/14
**begin [4]** 29/6 29/8 30/19 31/6
**beginning [3]** 15/24 16/1 32/21
**behalf [4]** 1/13 2/2 2/10 3/9
**behind [1]** 4/12
**being [4]** 23/9 26/19 32/11 34/12
**believe [6]** 5/22 10/7 26/19 27/18 27/18 32/22
**Ben [1]** 3/19
**BENJAMIN [1]** 2/11
**best [2]** 6/16 9/21
**Between [1]** 35/7
**beyond [6]** 6/4 7/15 11/20 11/21 15/5 28/12
**big [2]** 9/8 12/10
**bit [2]** 29/10 36/11
**Black [1]** 2/13
**BlackBerry [1]** 29/21
**BlackBerrys [1]** 29/12
**blog [1]** 29/22
**blogs [1]** 28/24
**blunt [1]** 15/19
**born [1]** 20/7
**both [4]** 6/11 17/17 26/1 27/16
**box [1]** 4/1
**brain [1]** 12/18
**breadth [2]** 15/24 15/25
**break [2]** 23/14 35/25
**breaks [1]** 4/14
**breathing [1]** 19/24
**bridge [1]** 18/3
**brought [2]** 23/9 28/1
**bucket [1]** 6/20
**burden [2]** 28/5 28/6
**BURTON [2]** 2/11 3/20

**C**

**call [4]** 3/6 7/9 23/23 36/14
**called [2]** 3/2 14/19
**calling [1]** 8/2
**can't [4]** 5/19 11/15 17/1 32/10
**cannot [2]** 29/8 31/2
**Caracciolo [1]** 36/15
**carefully [1]** 31/1
**CAROLINE [2]** 2/11 3/20
**case [62]**
**cases [1]** 9/11
**categories [2]** 10/6 13/15
**cell [2]** 29/11 29/21
**Certain [1]** 26/15
**certainly [5]** 15/25 16/2 16/14 17/10 17/14
**CERTIFICATE [1]** 37/20
**certify [1]** 38/6
**chair [1]** 30/24
**chances [1]** 34/22
**change [2]** 4/17 4/18
**character [2]** 6/16 7/10
**charged [2]** 25/20 25/23
**charges [1]** 26/1
**CHARLENE [2]** 2/6 3/16
**Charles [1]** 1/19
**chat [1]** 32/9
**check [2]** 17/22 23/5
**chestnut [1]** 15/10
**choose [1]** 30/25
**chose [1]** 9/19
**circumstances [1]** 17/17
**circumstantial [2]** 27/9 27/12
**cite [1]** 9/13
**civil [1]** 28/14
**clarify [1]** 20/20
**clean [1]** 28/3
**clear [3]** 9/11 16/1 17/12
**clients [1]** 26/18
**clipboards [1]** 23/19
**close [4]** 23/20 33/3 33/3 37/7
**closing [1]** 31/24
**collect [1]** 5/2
**combined [1]** 4/20
**come [9]** 4/12 8/14 8/17 10/5 15/12 17/2 23/21 31/10 32/6
**comes [2]** 8/4 31/13
**comfort [1]** 23/13
**comfortable [3]** 19/7 21/2 21/24
**comfortably [1]** 19/23
**coming [4]** 25/4 25/4 33/15 37/12
**commit [4]** 25/21 25/21 25/23 25/24
**commitment [1]** 6/23
**communicate [2]** 29/17 29/20
**communicated [1]** 22/3
**communication [1]** 35/8
**companies [2]** 13/14 15/5
**company [3]** 6/24 9/6 10/13
**compare [1]** 17/24
**completely [2]** 13/4 34/9
**comply [1]** 16/14
**compulsory [1]** 13/13
**COMPUTER [1]** 1/25
**COMPUTER-AIDED [1]** 1/25
**conclude [1]** 27/13
**concluded [1]** 37/19
**conditions [1]** 18/21
**conduct [2]** 28/15 28/19
**confer [1]** 18/14
**Conference [1]** 38/10
**confidentiality [1]** 14/5
**confines [1]** 29/2
**confirm [1]** 14/25
**conformance [1]** 38/10
**confusion [1]** 5/4
**consider [1]** 27/16
**considered [3]** 6/13 26/16 27/3
**considering [2]** 28/9 30/17
**consist [1]** 26/11
**consistently [1]** 7/20
**conspiracy [4]** 25/20 25/21 25/23 25/24
**consult [1]** 28/22
**consumption [1]** 12/23
**contemplate [1]** 17/11
**CONTINUED [2]** 1/23 2/1
**convenience [1]** 4/19
**conversation [1]** 13/18
**convinces [1]** 7/24
**Cook [1]** 23/22
**copies [2]** 24/6 24/7

C

**corporate [1]** 16/19
**corporations [2]** 10/10 16/20
**correct [10]** 13/3 15/3 15/9 18/12 20/19 20/21 21/14 21/15 32/22 38/7
**couldn't [1]** 14/19
**counsel [11]** 3/11 21/4 21/5 21/10 21/20 22/8 23/25 24/9 31/11 31/19 32/22
**couple [2]** 23/13 32/4
**course [3]** 26/7 30/10 36/16
**court [11]** 1/1 1/11 3/2 3/4 3/24 19/12 23/15 33/15 34/15 38/4 38/5
**Court's [1]** 32/11
**courthouse [1]** 25/6
**courtroom [12]** 6/3 6/14 7/11 19/5 19/10 24/10 25/6 27/5 27/7 28/18 29/2 35/13
**cover [2]** 14/1 24/20
**COWLEY [2]** 2/12 3/19
**cr [1]** 1/6
**credibility [1]** 27/20
**criminal [5]** 17/10 25/18 27/22 27/23 28/14
**criticism [1]** 15/19
**cross [9]** 6/4 7/9 7/15 8/6 11/25 13/6 18/3 31/19 31/22
**cross-examination [2]** 6/4 7/15
**cross-examine [3]** 7/9 31/19 31/22
**crossing [1]** 11/10
**CRR [1]** 38/16
**currently [1]** 23/8
**customarily [1]** 34/16
**cut [1]** 5/4
**CytoDyn [4]** 9/6 10/13 10/21 15/2

D

**daily [1]** 14/21
**Daniel [3]** 2/16 3/12 36/15
**Dated [1]** 38/12
**dates [1]** 10/5
**David [1]** 36/15
**day [8]** 12/16 16/24 24/22 25/5 30/21 30/22 33/21 38/12
**days [3]** 4/5 32/6 32/15
**DC [3]** 1/17 2/4 2/14
**deal [4]** 4/10 5/6 9/8 12/19
**dealt [1]** 5/23
**Deborah [1]** 36/9
**decide [4]** 27/6 27/17 28/16 28/25
**decides [1]** 16/15
**defendant [5]** 2/2 2/10 2/17 2/17 28/1
**defendants [12]** 1/8 6/12 25/19 26/1 27/25 28/3 28/6 28/8 28/10 31/19 31/20 32/7
**defendants' [2]** 28/11 31/14
**defense [22]** 6/5 8/6 9/18 10/2 10/10 12/6 12/6 12/15 12/24 13/20 14/22 15/18 15/20 16/18 17/22 18/6 18/10 18/17 35/21 36/3 37/5 37/11
**definition [1]** 17/17
**deliberate [6]** 29/3 29/6 32/1 33/4 33/14 34/25
**deliberations [4]** 29/8 30/8 30/19 34/20
**demonstrate [1]** 7/21
**Dennis [2]** 16/17 16/17
**deny [1]** 26/1
**DEPARTMENT [1]** 1/16
**depends [1]** 31/3
**detailed [1]** 30/13
**determining [1]** 27/20
**devices [1]** 29/12
**dicey [1]** 19/6
**dictionaries [1]** 28/22
**different [3]** 12/5 13/8 28/14
**difficult [2]** 19/23 30/13
**dire [11]** 4/15 4/16 5/1 5/3 19/5 19/6 19/10 19/13 20/4 22/23 24/19
**direct [6]** 7/4 7/16 9/1 27/8 27/10 27/10
**directions [1]** 34/1
**directly [1]** 9/16
**disclosable [1]** 18/7
**disclose [5]** 9/17 12/2 12/3 15/6 16/11
**disclosed [1]** 18/8
**disclosing [2]** 9/5 11/21
**disclosure [2]** 12/22 17/16
**discovery [1]** 13/17
**discretion [1]** 17/15
**discuss [3]** 29/3 29/8 30/18
**discussed [1]** 4/14
**discussing [1]** 29/6
**discussions [2]** 19/1 20/3
**dispute [2]** 11/24 18/14
**disputed [1]** 15/12
**disregard [1]** 27/2
**disregarded [1]** 27/5
**district [8]** 1/1 1/1 1/11 3/3 3/4 9/23 38/5 38/5
**DIVISION [1]** 1/2
**do [46]**
**Docket [1]** 1/5
**document [3]** 10/12 10/21 17/9
**documents [14]** 9/9 10/9 11/1 11/2 11/14 11/16 11/17 12/21 13/11 13/14 15/4 15/4 18/16 26/11
**dog [1]** 4/8
**doing [4]** 14/20 19/11 23/22 24/25
**Donohue [6]** 9/22 15/7 16/11 16/17 17/12 18/22
**door [2]** 25/4 25/5
**doubt [1]** 28/12
**Doug [1]** 3/16
**DOUGLAS [1]** 2/6
**down [3]** 5/4 24/17 34/11
**Dr [1]** 3/15
**Dr. [17]** 3/15 3/19 5/25 6/2 6/13 6/22 6/23 8/18 18/17 18/17 19/18 20/23 21/7 21/9 21/23 22/4 22/7
**Dr. Kazempour [5]** 3/19 18/17 21/23 22/4 22/7
**Dr. Pourhassan [7]** 3/15 6/23 8/18 18/17 20/23 21/7 21/9
**Dr. Pourhassan's [5]** 5/25 6/2 6/13 6/22 19/18
**during [5]** 19/10 26/7 28/19 29/15 30/10
**duty [1]** 26/2

E

**e-mail [4]** 14/7 14/13 29/21 36/4
**e-mails [4]** 5/8 5/11 5/21 5/24
**each [7]** 5/19 25/8 29/4 30/22 31/6 35/9 37/5
**ear [1]** 8/8
**early [1]** 4/12
**ease [1]** 19/4
**education [1]** 5/20
**efficient [1]** 4/6
**efficiently [4]** 4/9 4/11 8/10 8/10
**either [6]** 19/9 19/17 20/17 22/23 31/17 33/3
**electronic [1]** 28/24
**electronically [1]** 29/17
**eliminated [1]** 17/13
**else [13]** 18/9 18/23 19/15 22/23 23/5 28/3 29/9 31/2 33/7 34/3 35/4 35/9 37/14
**employer [1]** 34/2
**end [12]** 16/2 27/21 28/6 29/10 30/9 30/20 30/21 30/22 30/22 31/6 33/2 33/22
**enough [4]** 6/11 21/3 21/10 22/7
**entire [1]** 30/6
**entities [1]** 28/21
**entitled [2]** 34/24 38/9
**especially [1]** 13/24
**ESQUIRE [11]** 1/14 1/15 1/15 1/18 2/3 2/6 2/6 2/7 2/11 2/11 2/12
**essentially [4]** 7/18 9/23 10/23 10/25
**establish [1]** 13/10
**even [4]** 15/6 29/4 29/4 30/1
**ever [1]** 34/6
**every [3]** 25/5 33/21 35/5
**everybody [3]** 13/21 23/19 23/23
**everyone [7]** 3/6 3/22 23/18 24/17 24/21 35/16 36/18
**everything [4]** 6/8 13/3 15/21 25/6
**evidence [29]** 5/15 5/18 11/13 18/3 26/2 26/10 26/15 26/17 26/19 26/20 26/25 27/3 27/5 27/6 27/8 27/10 27/12 27/16 28/7 28/17 30/7 30/18 31/2 31/4 31/13 31/16 31/23 31/25 34/24
**exactly [2]** 10/11 19/2
**examination [2]** 6/4 7/15
**examine [5]** 7/9 7/17 11/6 31/19 31/22
**examples [1]** 5/19
**exceed [1]** 8/25
**excluded [1]** 27/2
**exercised [1]** 14/2
**exhibits [1]** 26/12
**exist [3]** 13/21 13/21 27/13
**exited [1]** 35/13
**expect [6]** 4/10 6/7 8/25 16/23 30/2 36/14
**experience [1]** 15/15
**experienced [2]** 15/16 34/6
**explain [2]** 4/14 24/24
**explains [1]** 34/8
**extend [1]** 4/4
**extensive [1]** 8/5
**extent [4]** 6/1 6/21 16/18 17/23
**eyes [1]** 12/22
**eyewitness [1]** 27/11

F

**Facebook [1]** 29/22
**Facebooking [1]** 35/8
**fact [5]** 6/15 11/11 11/23 12/8 27/11
**facts [8]** 26/3 26/3 26/4 26/4 26/10 26/12 27/12 27/13
**fair [3]** 6/6 6/7 7/7
**fairness [1]** 30/4
**false [1]** 25/25
**family [5]** 6/3 6/14 7/8 7/10 29/18
**far [1]** 12/24
**FBI [2]** 2/16 3/12
**FDA [1]** 8/3
**feasible [1]** 19/20
**Federal [3]** 17/10 38/4 38/17
**fellow [2]** 29/4 29/7
**few [4]** 23/10 23/11 28/15 36/12
**fighting [2]** 8/1 8/1
**figure [1]** 19/22
**finally [2]** 30/7 37/15
**find [7]** 15/6 17/20 18/6 26/2 26/10 26/14 29/1
**findings [1]** 16/10
**first [18]** 3/25 4/4 5/7 8/14 8/16 8/20 8/20 11/9 11/11 11/21 16/23 19/11 21/5 22/2 25/3 27/25 31/10 36/9
**five [1]** 23/3
**flexibility [1]** 36/12
**focus [1]** 17/8
**folder [2]** 30/12 33/16
**folks [3]** 19/5 19/8 19/14
**follow [8]** 5/3 19/13 20/10 20/12 20/18 26/6 27/1 33/18
**follow-up [6]** 5/3 19/13 20/10 20/12 20/18 33/18
**following [5]** 18/7 21/4 31/20 32/11 35/14
**foot [1]** 5/12
**foregoing [1]** 38/7
**form [1]** 30/7
**formal [3]** 21/5 22/3 32/4
**format [1]** 38/9
**forward [3]** 22/10 22/11 22/12
**foundation [1]** 5/17
**four [1]** 28/17
**frankly [2]** 5/8 12/19
**fraud [8]** 25/21 25/21 25/22 25/22 25/24 25/24 25/25 25/25
**Friday [3]** 8/21 32/18 32/23
**friends [1]** 29/19
**front [2]** 5/3 25/5
**full [1]** 32/23
**further [5]** 11/15 12/3 27/14 28/12 33/25
**future [1]** 17/2

G

**game [1]** 6/7
**games [1]** 4/7
**gave [2]** 15/7 15/10
**general [1]** 20/8
**getting [6]** 3/25 7/4 12/7 15/20 16/13 23/20
**give [15]** 4/23 9/12 9/15 9/21 19/14 19/24 25/1 27/14 27/19 28/12 30/23 31/2 32/16 37/11 37/11
**given [3]** 8/20 12/20 16/18
**gives [3]** 6/11 15/17 20/16
**giving [1]** 12/5
**global [1]** 8/8
**go [26]** 4/5 4/13 4/13 5/16 5/19 7/15 8/9 8/10 8/11 12/25 14/12 21/10 21/13 22/10 22/11 22/12 23/20 32/6 32/7 32/13 34/11 34/23 35/5 35/10 36/17 37/15
**goes [3]** 3/25 7/6 34/7
**going [46]**
**gone [1]** 4/16
**good [13]** 3/6 3/14 3/17 3/18 3/21 20/23 20/24 20/25 23/3 23/7 23/12 33/6 35/3
**Google [1]** 29/23
**got [6]** 13/2 13/15 20/15 33/19 36/3 37/8
**government [27]** 3/6 6/6 6/7 7/9 7/22 7/23 8/2 9/7 9/17 9/18 10/7 11/6 12/2 14/3 17/21 18/1 18/14 18/18 19/16 21/6 28/1 28/5 28/11 31/11 31/18 31/21 37/2
**government's [5]** 6/2 8/16 17/22 31/20 36/1
**grand [9]** 9/19 9/25 10/4 10/5 10/6 10/17 11/23 12/19 17/11
**grant [1]** 18/20
**Great [1]** 9/3
**green [1]** 12/13
**GREENBELT [1]** 1/2
**grounded [1]** 5/14
**guarantee [1]** 25/10
**guardrails [1]** 18/7
**guess [2]** 6/9 24/13
**guidance [1]** 6/11
**guidelines [1]** 27/20
**guilt [2]** 28/2 28/11

H

**half [1]** 37/8
**hallway [1]** 32/8
**handing [1]** 23/19
**handle [1]** 4/17
**handles [1]** 9/4
**handy [1]** 5/24
**happen [2]** 9/25 32/2
**happened [1]** 16/9
**hard [1]** 9/14
**having [1]** 11/14
**he'll [1]** 25/3
**heads [1]** 37/11
**heads-up [1]** 37/11
**hear [4]** 16/23 31/10 34/24 35/5
**heard [3]** 16/6 27/4 35/18
**hearing [1]** 8/5
**held [1]** 38/8
**hello [1]** 32/8
**help [8]** 10/25 11/4 11/5 11/12 11/15 12/6 28/25 31/12
**hereby [1]** 38/6
**hesitation [2]** 21/16 22/18
**Hi [1]** 23/18
**highest [1]** 14/4
**highlighted [1]** 6/21
**hold [1]** 34/10
**holiday [1]** 32/19
**holidays [1]** 33/5
**home [6]** 4/13 30/20 32/13 35/5 35/10 37/15
**honest [1]** 16/7
**Honor [46]**
**HONORABLE [3]** 1/10 3/5 23/15
**hope [2]** 6/11 33/2
**hoping [1]** 36/11
**Horvath [1]** 36/15
**hour [3]** 4/13 25/11 37/8
**however [2]** 12/22 30/13
**huh [1]** 24/12

I

**I'll [10]** 4/9 4/14 5/2 5/24 7/12 24/24 27/14 27/19 28/12 34/14
**I'm [40]**
**I've [10]** 4/16 4/19 4/20 4/21 6/13 15/16 16/6 24/2 27/2 34/6
**identified [1]** 10/1
**identifiers [1]** 10/15
**identifies [1]** 9/24
**identify [1]** 11/17
**identifying [1]** 10/18
**ignore [1]** 26/22
**imagine [1]** 15/12
**importance [2]** 9/25 10/3
**important [1]** 24/23
**improper [1]** 26/19
**inclined [1]** 14/3
**include [2]** 14/12 18/17
**includes [1]** 29/18
**including [2]** 14/13 29/22
**incriminating [3]** 11/1 11/13 13/11
**independent [1]** 28/19
**indicate [1]** 26/8
**indicating [1]** 26/8
**indicted [2]** 12/20 17/12
**indictment [3]** 13/22 25/20 28/1
**individual [1]** 31/1
**individuals [5]** 14/6 14/9 14/18 24/14 28/20
**infer [1]** 27/13

**I**

**influenced [1]** 26/20
**inform [1]** 30/2
**information [6]** 10/7 12/6 16/20 20/16 28/25 29/1
**innocence [1]** 28/7
**innocent [1]** 27/25
**inquire [1]** 24/14
**insider [1]** 25/22
**Instagram [1]** 29/23
**instead [1]** 22/11
**instruct [4]** 4/25 26/5 26/13 31/23
**instructed [1]** 26/24
**instruction [2]** 27/1 27/14
**instructions [8]** 24/24 25/1 25/17 28/12 30/3 30/23 32/4 33/15
**intended [2]** 6/9 26/8
**intending [1]** 18/15
**intention [1]** 17/7
**interest [1]** 17/13
**interfere [1]** 30/17
**internet [2]** 28/23 29/13
**internetting [1]** 35/8
**interpret [1]** 31/25
**introduced [1]** 18/2
**investigation [4]** 6/2 11/6 13/9 17/23
**investigators [1]** 15/22
**involved [1]** 28/21
**iPhone [1]** 29/21
**iPhones [1]** 29/12
**is [109]**
**ish [2]** 37/6 37/6
**isn't [2]** 10/10 11/18
**issue [6]** 15/12 15/23 16/3 16/21 19/14 20/20
**issues [1]** 4/2
**item [1]** 26/24
**itself [6]** 5/2 9/5 11/18 12/1 15/16 18/2

**J**

**JASON [2]** 2/12 3/19
**jeopardizes [1]** 30/4
**JERRY [2]** 2/7 3/15
**jobs [1]** 14/21
**jot [1]** 34/11
**judge [4]** 1/11 16/15 18/25 24/8
**judge's [1]** 16/15
**judges [1]** 26/3
**judgment [1]** 31/3
**Judicial [1]** 38/10
**judicious [1]** 6/9
**jump [1]** 4/9
**juror [5]** 30/3 33/9 33/12 33/14 35/17
**juror's [1]** 30/3
**jurors [14]** 4/19 4/23 19/6 19/23 23/8 24/14 28/15 28/16 29/4 29/7 33/11 33/24 34/16 34/23
**jury [33]** 1/10 3/23 3/23 3/24 3/25 4/5 4/5 4/11 4/17 9/19 9/25 10/4 10/5 10/6 10/17 11/23 12/3 12/19 17/11 18/24 19/12 23/5 24/16 24/19 25/3 25/13 30/22 31/4 34/11 34/20 35/12 35/13 35/15
**Jury's [1]** 25/14
**JUSTICE [1]** 1/16

**K**

**Kang [1]** 36/15
**KAZEM [6]** 1/7 2/10 2/17 3/9 25/19 25/23
**KAZEMPOUR [11]** 1/7 2/10 2/17 3/9 3/19 18/17 21/23 22/4 22/7 25/19 25/23
**keep [5]** 5/24 27/15 27/23 30/8 31/7
**Kimberly [1]** 36/10
**kinds [2]** 27/8 27/16
**knock [1]** 3/22
**knowledge [1]** 5/11
**knows [1]** 13/21

**L**

**lack [4]** 6/1 11/1 11/6 11/13
**last [5]** 4/3 14/24 20/4 23/23 34/2
**later [2]** 5/4 28/13
**LAUREN [2]** 1/14 3/10
**law [6]** 9/11 9/12 26/5 26/6 28/9 31/24
**lawyers [7]** 22/2 22/15 24/10 26/13 26/17 32/7 34/15
**lead [1]** 20/12
**leading [5]** 6/3 7/14 7/23 8/7 8/11
**leave [3]** 4/1 30/21 30/24
**Leeper [3]** 38/4 38/15 38/16
**left [2]** 3/15 24/2
**legitimate [1]** 13/16
**length [1]** 36/25
**letter [2]** 5/25 34/1
**letters [3]** 5/6 5/23 14/2
**level [1]** 14/5
**light [2]** 12/13 12/16
**limit [1]** 12/22
**limited [5]** 6/17 13/5 15/1 16/19 26/25
**limits [1]** 6/8
**line [1]** 16/1
**lined [1]** 23/9
**lining [1]** 23/19
**LinkedIn [1]** 29/23
**LINKLATERS [2]** 2/3 2/7
**list [11]** 4/20 4/20 4/23 5/1 5/3 24/1 24/3 24/4 24/7 26/16 36/2
**listen [2]** 5/10 31/1
**listening [2]** 4/24 30/17
**little [5]** 23/10 24/24 25/2 33/19 36/11
**Lives [1]** 2/13
**LLP [3]** 2/3 2/7 2/12
**local [1]** 36/13
**long [4]** 5/16 16/10 20/15 24/22
**look [2]** 4/24 11/17
**looked [1]** 5/22
**lose [1]** 33/12
**lot [3]** 5/4 16/9 19/5
**loud [1]** 4/23
**LURIE [3]** 2/3 3/14 6/15

**M**

**made [4]** 11/9 11/11 11/23 16/1
**mail [4]** 14/7 14/13 29/21 36/4
**mails [4]** 5/8 5/11 5/21 5/24
**make [20]** 3/24 4/18 4/25 5/1 5/1 7/11 11/19 11/19 15/20 16/10 19/7 20/13 21/3 26/18 31/11 31/15 32/9 34/1 35/1 37/10
**makes [2]** 17/12 24/13
**making [2]** 23/23 25/25
**many [2]** 29/11 29/13
**marks [1]** 4/25
**MARYLAND [3]** 1/1 3/4 38/6
**material [4]** 11/23 12/14 13/19 13/20
**materials [2]** 23/24 28/23
**matter [5]** 2/13 9/18 10/18 18/5 38/9
**matters [2]** 27/15 28/20
**MATTHEW [2]** 1/15 3/10
**maximum [1]** 37/3
**may [39]**
**maybe [6]** 6/16 10/18 12/4 12/4 15/23 34/4
**McGUIRE [1]** 2/12
**MD [1]** 1/20
**mean [11]** 4/7 7/25 12/7 13/3 14/9 14/18 15/16 15/20 16/9 17/21 34/5
**means [4]** 7/20 12/7 18/9 28/18
**media [3]** 28/23 29/13 29/25
**meet [5]** 17/17 17/17 25/8 28/18 32/14
**members [2]** 7/8 31/4
**mentioned [2]** 19/3 30/1
**messaging [1]** 29/21
**met [1]** 16/12
**might [2]** 19/24 34/9
**millions [1]** 11/16
**mind [5]** 8/17 27/15 27/24 28/13 30/8
**minute [1]** 10/9
**minutes [6]** 10/20 23/3 23/10 23/11 23/13 37/2
**mistaken [1]** 8/19
**mistrial [1]** 30/5
**MONDAY [4]** 1/11 8/24 32/19 32/23
**monkey [1]** 5/18
**more [11]** 6/17 19/14 21/2 21/19 21/23 22/14 24/24 25/2 28/2 30/23 37/11
**morning [14]** 3/6 3/14 3/17 3/18 3/21 8/24 8/24 20/24 20/25 25/9 31/6 31/10 35/25 36/22
**most [1]** 17/20
**motion [1]** 12/10
**move [3]** 4/2 19/12 23/10
**Mr [1]** 6/2
**Mr. [10]** 6/15 19/2 19/21 23/19 23/22 24/17 25/2 25/12 30/12 30/23
**Mr. Cook [1]** 23/22
**Mr. Lurie [1]** 6/15
**Mr. O'Neil [1]** 24/17
**Mr. Ulander [7]** 19/2 19/21 23/19 25/2 25/12 30/12 30/23
**much [4]** 6/17 27/18 31/7 35/11
**must [12]** 26/6 26/15 26/25 27/3 27/5 27/23 28/11 28/16 28/19 29/16 30/21 31/4
**myself [1]** 3/19
**Myspace [1]** 29/23

**N**

**NADER [6]** 1/7 2/2 2/17 3/8 25/19 25/20
**name [1]** 27/10
**names [7]** 4/22 4/24 10/4 10/14 14/5 14/8 14/14
**nature [1]** 17/23
**necessarily [1]** 15/17
**need [10]** 3/24 8/10 10/1 10/24 12/8 17/15 17/20 21/1 21/19 22/14
**needs [1]** 23/13
**never [1]** 16/4
**new [3]** 1/16 2/8 16/5
**next [5]** 10/20 23/10 31/14 32/19 36/12
**nice [1]** 32/9
**NICOLE [2]** 2/7 3/15
**night [2]** 20/4 35/5
**no [29]** 5/20 6/9 8/15 11/3 12/4 13/11 14/23 15/4 17/6 19/16 20/9 20/9 21/21 22/17 22/21 22/25 23/1 23/6 28/6 35/7 35/7 35/7 35/8 35/8 35/8 35/22 35/23 36/14 37/16
**none [1]** 19/17
**Nope [1]** 23/2
**not [79]**
**note [2]** 30/16 34/11
**note-taking [1]** 30/16
**notepads [1]** 30/11
**notes [10]** 1/25 5/1 30/10 30/13 30/16 30/18 30/19 30/20 30/25 31/3
**nothing [9]** 13/22 13/23 14/19 14/20 15/5 15/5 26/7 28/2 34/6
**noticed [1]** 20/3
**NOVEMBER [2]** 1/11 38/12
**NSF [4]** 9/6 10/13 10/21 15/2
**number [8]** 1/5 3/9 3/22 5/6 6/5 6/11 6/13 7/14
**NW [3]** 1/16 2/4 2/13
**NY [1]** 2/8

**O**

**O'NEIL [3]** 2/11 3/19 24/17
**objecting [1]** 9/7
**objection [4]** 19/8 19/16 26/20 26/22
**objections [2]** 26/17 26/18
**obligation [1]** 26/18
**observations [1]** 7/11
**obtain [1]** 28/24
**obviously [2]** 23/10 24/9
**off [1]** 12/9
**offered [1]** 26/19
**offers [7]** 21/6 21/6 21/10 21/13 22/3 22/8 22/11
**office [5]** 1/19 14/6 14/11 14/13 14/18
**OFFICIAL [3]** 38/1 38/4 38/17
**often [2]** 15/13 15/19
**Oh [1]** 24/3
**Okay [34]** 3/13 7/2 8/19 8/23 9/3 16/16 17/8 18/22 20/23 21/9 21/12 21/16 21/22 22/6 22/10 22/18 22/22 23/3 23/12 24/2 25/15 32/3 32/11 33/5 33/16 33/25 34/2 35/3 35/16 35/20 36/22 36/24 37/4 37/10
**old [2]** 15/10 15/11
**once [3]** 17/12 29/7 34/14
**one [19]** 3/25 4/1 4/3 4/17 5/7 5/7 6/20 8/8 9/16 13/5 13/9 14/24 16/6 20/3 20/3 20/17 24/8 33/21 34/4
**only [10]** 4/22 12/1 12/22 15/3 16/19 17/23 19/11 26/25 28/2 29/7
**open [2]** 19/12 30/8
**opening [5]** 31/11 31/12 31/15 31/16 37/1
**openings [1]** 37/9
**opinion [1]** 30/7
**order [13]** 3/2 4/21 7/18 8/16 12/21 13/24 14/3 16/11 17/15 18/9 18/11 23/23 36/14
**ordering [2]** 9/17 15/1
**orders [2]** 16/15 32/11
**ordinary [1]** 7/3
**Oremland [1]** 36/9
**other [14]** 6/20 7/11 13/18 24/10 25/8 26/11 26/23 27/13 27/15 28/22 28/24 29/5 29/12 35/9
**others [4]** 16/22 16/23 17/4 17/7
**otherwise [1]** 5/15
**out [14]** 3/22 4/22 7/18 19/22 23/19 23/21 24/2 25/5 25/10 28/3 29/1 34/14 35/14 37/10
**outline [1]** 31/12
**outside [3]** 18/16 27/4 29/2
**over [8]** 4/16 9/8 9/9 12/20 15/17 21/10 30/6 32/2
**overnight [1]** 9/15
**overruled [1]** 26/23
**overview [1]** 32/3
**own [2]** 20/18 31/1

**P**

**p.m [2]** 35/13 37/19
**page [1]** 38/9
**pages [1]** 11/16
**paid [1]** 25/2
**paralegals [1]** 14/13
**parent [2]** 9/6 10/13
**Parker [6]** 2/16 3/12 11/11 12/1 13/6 36/15
**part [3]** 15/21 34/16 34/19
**particular [4]** 5/13 5/14 33/16 36/14
**particularized [4]** 10/1 10/24 17/15 17/20
**particularly [2]** 13/16 13/17
**parties [3]** 8/1 19/4 19/9
**parting [1]** 32/4
**past [1]** 31/7
**PAULA [5]** 1/10 3/5 38/4 38/15 38/16
**pay [1]** 30/14
**periods [1]** 10/8
**permitted [3]** 7/23 8/11 31/17
**permitting [1]** 5/25
**perplexed [1]** 15/23
**personal [3]** 5/11 6/23 29/12
**persuasive [1]** 17/21
**phone [1]** 29/21
**phones [2]** 29/11 29/11
**picked [2]** 9/19 33/11
**pivot [1]** 20/2
**place [1]** 13/24
**Plaintiff [2]** 1/5 1/13
**plan [2]** 11/12 11/25
**play [1]** 8/8
**Plaza [1]** 2/13
**plea [5]** 19/1 20/2 21/5 21/6 22/3
**please [3]** 8/25 10/19 29/1
**point [7]** 5/17 7/7 8/9 9/16 28/13 29/24 33/12
**possible [1]** 19/18
**potential [1]** 24/4
**POURHASSAN [14]** 1/7 2/2 2/17 3/8 3/15 3/15 6/23 8/18 18/17 20/23 21/7 21/9 25/19 25/20
**Pourhassan's [5]** 5/25 6/2 6/13 6/22 19/18
**practice [2]** 6/5 35/17
**predict [1]** 17/2
**preliminary [3]** 24/23 25/1 25/17
**preparation [2]** 12/15 18/6
**prepare [2]** 12/6 13/20
**presence [2]** 7/10 35/14
**present [7]** 2/16 11/20 19/9 28/7 31/18 31/21 31/24
**presented [2]** 27/6 28/17
**presiding [1]** 3/5
**presumed [1]** 27/25
**print [1]** 24/1
**printed [1]** 24/7
**priority [1]** 10/18
**private [1]** 34/20
**probably [3]** 16/8 24/13 36/25
**probative [1]** 12/5
**problem [1]** 14/22
**Procedure [1]** 17/11
**proceedings [5]** 10/1 30/5 35/14 37/19 38/8
**process [6]** 9/20 13/13 17/19 30/6 34/11 34/19
**produce [2]** 14/3 15/1
**produced [3]** 11/16 13/14 16/4
**producing [1]** 13/23
**proffer [1]** 6/15
**prohibited [2]** 9/17 32/10
**prohibiting [1]** 13/23
**prohibits [1]** 28/9
**promise [2]** 4/12 31/8
**proof [4]** 27/10 27/12 28/2 28/5
**proper [1]** 16/10
**proposed [1]** 10/6
**proposition [1]** 17/25
**prosecution [1]** 8/3

**P**

**prospective [1]** 4/20
**protect [1]** 17/18
**protecting [1]** 17/11
**protective [5]** 12/21 13/24 16/11 18/8 18/11
**prove [4]** 10/25 11/12 28/6 28/11
**provided [1]** 30/11
**public [1]** 12/23
**pun [1]** 6/9
**punt [1]** 5/8
**purpose [1]** 26/25
**purposes [1]** 33/18
**pursuant [3]** 13/23 18/21 38/6
**put [3]** 4/21 6/20 6/24
**PX [2]** 1/6 3/9
**PX-22-440 [1]** 3/9

**Q**

**question [13]** 5/8 6/13 12/16 12/25 20/6 20/6 21/17 24/8 26/22 33/6 33/18 34/4 34/5
**questioning [1]** 6/1
**questions [15]** 6/3 7/15 7/23 8/7 8/11 18/1 19/11 22/1 26/17 32/12 34/5 34/16 34/18 34/23 35/17
**quickly [3]** 4/2 9/7 9/10
**quoting [1]** 16/17

**R**

**raise [1]** 34/22
**raised [1]** 4/3
**read [2]** 4/22 16/16
**reading [1]** 9/15
**ready [6]** 5/16 15/20 18/23 23/20 23/24 36/17
**real [1]** 19/6
**really [8]** 4/18 7/25 9/7 9/11 9/24 14/20 15/19 19/19
**reason [1]** 33/12
**reasonable [1]** 28/12
**reasons [3]** 5/14 13/5 13/16
**recalled [1]** 7/20
**receive [1]** 14/4
**received [3]** 17/24 26/12 26/25
**recess [2]** 23/16 23/17
**record [3]** 26/12 36/5 36/6
**recorded [1]** 24/19
**redact [1]** 14/14
**reduced [1]** 17/14
**reference [1]** 28/23
**regard [1]** 7/12
**regarding [1]** 5/25
**regulations [1]** 38/10
**REILLY [2]** 1/15 3/10
**reject [1]** 27/19
**rejected [1]** 21/13
**related [1]** 29/15
**relatively [1]** 4/2
**relevance [2]** 7/4 18/5
**relevant [6]** 6/21 6/25 7/3 12/5 13/7 18/6
**remain [1]** 28/8
**remember [2]** 30/25 31/4
**reported [1]** 38/8
**REPORTER [3]** 38/1 38/4 38/17
**request [8]** 7/7 13/4 13/18 15/4 16/2 16/5 17/1 18/21
**requested [1]** 9/19
**require [2]** 20/18 30/5
**requirements [1]** 17/18
**research [1]** 28/19
**reservation [1]** 22/19
**respect [3]** 9/5 13/6 28/13
**response [1]** 13/25
**responses [2]** 5/9 20/9
**responsibility [2]** 31/1 31/2
**responsive [1]** 13/14
**rest [3]** 32/20 35/10 37/15
**restrictions [1]** 30/4
**result [2]** 17/25 30/5
**retire [3]** 29/3 29/6 32/1
**returned [2]** 13/22 29/9
**returns [1]** 14/12
**review [1]** 22/7
**reviewed [1]** 21/6
**right [37]** 6/8 6/18 8/1 9/13 10/11 15/14 16/10 16/13 16/16 16/25 17/6 18/11 18/13 18/15 18/20 19/2 19/5 20/14 20/16 21/14 22/22 23/7 23/14 24/21 25/17 28/8 30/12 32/12 32/23 32/25 33/6 34/3 35/24 36/20 37/8 37/14 37/17
**rise [4]** 3/3 23/15 24/16 35/12
**road [1]** 31/8
**role [1]** 6/9
**roll [1]** 23/23
**rolling [1]** 25/10
**room [7]** 19/12 19/14 19/18 19/25 25/4 30/22 34/11
**round [1]** 19/11
**RPR [1]** 38/16
**rude [1]** 32/11
**Rule [8]** 9/18 12/4 12/5 12/13 13/23 17/10 17/18 18/5
**rules [8]** 5/14 5/16 5/18 7/19 7/22 17/10 26/19 27/23
**ruling [1]** 26/21
**run [2]** 24/23 37/10
**rush [2]** 4/13 25/11

**S**

**salvo [1]** 5/9
**same [5]** 22/1 30/14 33/10 35/6 37/5
**satellite [1]** 16/21
**saw [3]** 4/3 20/11 20/14
**saying [5]** 4/8 9/17 9/21 13/4 30/14
**scope [6]** 6/4 6/17 7/15 9/1 13/6 15/18
**search [1]** 28/23
**seat [3]** 3/21 25/16 35/16
**second [3]** 11/10 28/5 36/9
**secrecy [5]** 9/25 10/3 17/11 17/13 17/18
**secret [3]** 11/23 13/20 34/21
**securities [4]** 25/21 25/22 25/24 25/24
**see [12]** 5/22 7/2 7/4 7/5 8/4 9/21 12/24 25/8 32/7 34/25 35/10 37/18
**seeing [1]** 11/7
**seem [1]** 16/1
**seems [2]** 9/11 12/1
**seen [5]** 6/23 16/6 18/9 27/4 34/6
**sees [1]** 12/16
**selected [1]** 24/22
**selection [1]** 4/17
**sense [4]** 4/7 4/8 24/13 35/1
**sent [2]** 10/12 13/13
**separate [2]** 12/15 24/20
**sequencing [1]** 36/12
**service [1]** 35/11
**session [1]** 3/4
**seven [2]** 36/19 36/21
**several [2]** 32/6 32/15
**severalfold [1]** 10/3
**shall [1]** 18/8
**sharp [2]** 3/23 25/9
**sheet [2]** 5/2 33/19
**shouldn't [2]** 7/25 8/4
**show [1]** 25/3
**showing [1]** 17/14
**side [1]** 22/23
**silent [1]** 28/8
**similar [1]** 29/25
**simply [2]** 29/14 31/12
**since [3]** 4/3 9/8 28/8
**single [1]** 33/21
**sit [6]** 21/1 21/23 32/17 32/17 32/19 32/20
**sitting [1]** 19/23
**six [3]** 24/7 36/23 36/24
**slate [1]** 28/4
**slippery [1]** 17/5
**sliver [1]** 10/18
**slope [1]** 17/5
**small [1]** 10/18
**smart [1]** 29/11
**Snapchat [1]** 29/23
**so [68]**
**social [3]** 28/23 29/13 29/25
**solely [2]** 27/6 28/16
**somebody [1]** 34/8
**someone [2]** 31/2 36/17
**something [4]** 4/21 7/25 34/8 34/12
**soon [1]** 30/2
**sorry [1]** 36/23
**sort [6]** 5/12 7/3 8/13 20/22 32/2 32/9
**source [2]** 16/20 29/1
**space [1]** 19/19
**spare [1]** 23/4
**speak [2]** 21/4 23/9
**Special [2]** 2/16 3/12
**specific [1]** 13/5
**specifically [1]** 30/1
**squarely [1]** 16/21
**SRIDHARAN [2]** 1/15 3/11
**stairs [1]** 32/8
**stand [3]** 7/19 21/1 34/9
**standard [1]** 14/11
**stands [1]** 23/16
**start [8]** 20/23 22/2 23/24 28/3 30/6 30/8 33/5 35/6
**starts [1]** 8/24
**statement [4]** 25/25 31/11 31/12 31/15
**statements [1]** 31/16
**STATES [11]** 1/1 1/4 1/11 3/3 3/8 3/10 15/7 18/22 20/7 38/5 38/11
**States v. Donohue [2]** 15/7 18/22
**States v. Nader [1]** 3/8
**stenographically [2]** 24/19 38/8
**stenographically-reported [1]** 38/8
**STENOTYPE [1]** 1/25
**step [2]** 33/13 34/14
**stipulate [1]** 26/13
**Street [3]** 1/19 2/4 2/13
**Struble [1]** 36/10
**stuff [2]** 9/15 10/24
**stupid [1]** 34/5
**subpoena [7]** 9/5 9/8 9/20 12/1 14/6 15/16 18/2
**subpoenas [21]** 10/4 10/9 10/12 10/17 10/21 11/12 11/15 11/21 11/21 11/25 12/2 14/2 14/4 14/5 14/11 14/25 16/4 16/19 16/22 17/9 18/8
**such [1]** 27/11
**suggests [1]** 27/10
**Suite [2]** 2/4 2/14
**summarize [1]** 31/25
**superseding [1]** 12/20
**Supp [1]** 9/23
**support [1]** 7/8
**sustained [1]** 26/22
**swear [1]** 25/3
**sworn [2]** 25/13 25/14
**system [1]** 31/3

**T**

**table [2]** 3/11 24/9
**taken [3]** 4/19 23/17 26/8
**takes [1]** 23/10
**taking [3]** 6/15 30/16 31/3
**talk [3]** 6/22 29/16 35/24
**talked [2]** 25/18 34/12
**talking [3]** 13/17 34/10 35/7
**team [1]** 18/17
**technology [2]** 29/14 29/25
**television [1]** 34/7
**tell [4]** 5/19 12/24 15/15 29/7
**telling [1]** 12/11
**ten [1]** 10/20
**terms [2]** 17/22 36/12
**test [1]** 8/24
**testified [1]** 26/10
**testify [2]** 14/16 28/7
**testimony [5]** 10/6 26/11 27/2 27/11 27/19
**text [1]** 29/21
**texting [1]** 35/7
**Thanksgiving [1]** 33/4
**themselves [1]** 10/4
**therefore [1]** 28/3
**thereof [1]** 6/1
**they'd [2]** 11/19 11/20
**they're [8]** 6/15 14/20 17/13 32/10 32/11 34/20 34/21 37/12
**they've [2]** 12/19 15/3
**thing [5]** 14/24 20/3 20/15 33/10 35/6
**things [7]** 3/22 21/4 26/12 26/13 26/15 34/17 34/23
**think [11]** 5/7 7/19 9/4 11/22 11/24 16/17 18/13 20/8 20/17 24/5 29/24
**third [2]** 28/11 32/21
**Thirteenth [1]** 2/4
**thorniest [1]** 5/7
**though [2]** 8/9 18/5
**thought [2]** 23/20 34/19
**thoughts [1]** 32/5
**three [6]** 4/14 13/13 15/5 16/19 16/20 27/23
**through [7]** 4/2 5/19 9/19 24/23 29/21 29/22 32/23
**Thursday [1]** 32/18
**tight [2]** 17/16 19/10
**time [11]** 4/3 4/4 10/7 21/3 21/10 21/19 22/7 22/15 29/16 30/15 33/4
**times [1]** 36/17
**today [9]** 4/1 7/3 8/21 8/22 8/23 10/20 21/13 33/19 34/6
**together [1]** 8/23
**told [2]** 27/2 32/9
**tomorrow [4]** 25/8 32/2 32/17 35/7
**tools [3]** 28/24 29/14 29/17
**topic [1]** 22/24
**topics [1]** 10/6
**tough [1]** 19/24
**traffic [1]** 31/8
**training [1]** 25/22
**transcript [2]** 38/7 38/9
**TRANSCRIPTION [1]** 1/25
**traveling [1]** 36/13
**treat [2]** 26/23 33/13
**trial [17]** 1/10 3/24 12/17 16/24 21/13 22/11 22/13 26/7 28/19 29/15 30/6 30/11 30/21 30/22 31/6 33/22 34/2
**tried [1]** 4/11
**true [2]** 14/25 38/7
**try [4]** 5/10 19/21 24/6 29/1
**trying [4]** 5/11 12/18 19/7 19/22
**turned [2]** 9/9 15/17
**turning [1]** 9/8
**TWEEN [2]** 2/6 3/16
**tweeting [1]** 35/8
**Twitter [1]** 29/22
**two [8]** 5/23 12/25 13/7 13/10 13/16 25/19 27/8 32/20

**U**

**U.S [2]** 1/16 1/19
**U.S.C [1]** 38/6
**Uh [1]** 24/12
**Uh-huh [1]** 24/12
**Ulander [7]** 19/2 19/21 23/19 25/2 25/12 30/12 30/23
**under [11]** 7/22 10/1 12/21 15/7 16/11 17/16 17/16 18/8 18/21 24/19 26/19
**understand [8]** 5/9 5/13 7/17 14/8 19/20 31/13 34/9 34/13
**understanding [9]** 7/9 10/16 11/9 15/14 20/8 21/12 23/18 36/16 36/20
**unfolds [1]** 34/17
**unique [1]** 16/9
**UNITED [11]** 1/1 1/4 1/11 3/3 3/8 3/10 15/7 18/21 20/7 38/5 38/11
**until [9]** 23/17 28/5 28/18 29/3 29/9 30/7 30/8 34/10 35/25
**up [15]** 5/3 8/14 8/17 15/12 17/2 19/13 20/10 20/12 20/18 23/9 23/9 23/19 27/17 33/18 37/11
**use [10]** 11/12 11/25 12/1 18/16 28/24 29/11 29/12 29/14 29/17 29/25
**used [1]** 15/17
**Usually [1]** 30/24

**V**

**v. [3]** 3/8 15/7 18/22
**vacuum [1]** 5/19
**VASANTH [2]** 1/15 3/10
**verdict [4]** 26/9 28/9 29/9 32/1
**versus [1]** 10/1
**very [16]** 9/2 9/10 15/12 15/19 17/16 17/25 20/15 20/23 23/3 23/7 23/12 23/20 23/23 24/22 28/6 35/3
**view [2]** 5/12 13/12
**views [1]** 34/15
**violates [1]** 30/4
**violation [1]** 30/3
**voir [11]** 4/15 4/16 5/1 5/3 19/4 19/6 19/10 19/13 20/3 22/23 24/19
**VOLUME [1]** 1/10
**vs [1]** 1/6

**W**

**wait [2]** 10/9 23/25
**walking [1]** 4/8
**walls [1]** 28/17
**want [11]** 8/9 9/7 9/16 12/2 14/25 17/4 18/25 21/3 30/10 35/18 36/5

**W**

**wanted [2]** 20/13 20/20
**wants [2]** 17/21 17/22
**WARNER [2]** 2/6 3/16
**was [18]** 5/11 5/22 6/21 8/19 10/12 13/6 13/7 13/9 15/7 15/18 15/23 15/24 15/25 16/2 16/5 16/17 17/24 17/24
**Washington [3]** 1/17 2/4 2/14
**way [4]** 4/1 17/23 20/8 29/15
**ways [1]** 13/8
**we'll [12]** 4/13 5/2 7/5 8/4 8/8 18/3 18/14 23/11 23/24 24/25 34/22 35/10
**website [1]** 29/22
**websites [1]** 28/24
**Wednesday [8]** 8/24 25/9 31/10 32/18 35/11 35/25 36/22 37/18
**week [12]** 8/16 32/17 32/19 32/20 32/20 32/21 32/23 32/23 33/2 36/2 36/14 36/18
**week's [2]** 8/20 8/20
**Wei [1]** 36/15
**well [11]** 4/11 9/2 14/12 16/8 16/16 17/3 24/1 24/15 27/14 29/14 36/6
**whatever [3]** 13/19 15/6 33/12
**whatsoever [1]** 35/9
**whether [8]** 4/4 8/3 8/5 8/6 12/16 18/25 24/14 26/6
**while [2]** 4/23 23/25
**whole [2]** 4/12 13/18
**whom [1]** 31/21
**wife [3]** 6/3 6/22 19/18
**willing [1]** 4/5
**wire [4]** 25/21 25/22 25/24 25/25
**wish [4]** 12/22 21/13 22/10 31/21
**wishes [1]** 22/23
**within [1]** 28/17
**witness [17]** 4/20 4/20 7/18 7/19 7/21 7/21 7/21 8/2 8/5 8/12 8/14 10/14 24/3 24/4 36/1 36/9 36/10
**witness's [1]** 27/19
**witnesses [24]** 4/9 5/13 6/16 6/16 7/10 8/16 8/17 8/20 8/20 8/25 10/5 11/6 14/19 15/4 18/1 26/11 27/17 27/18 27/20 30/14 31/18 31/21 36/19 37/10
**witnesses' [1]** 5/10
**won't [2]** 7/24 25/5
**WOODS [1]** 2/12
**words [2]** 28/15 28/22
**work [2]** 17/22 33/18
**working [2]** 18/12 24/11
**world [1]** 13/10
**wrap [1]** 12/18
**write [1]** 24/17
**written [3]** 12/10 21/6 22/3
**wrong [2]** 12/25 32/22

**X**

**XINIS [2]** 1/10 3/5

**Y**

**Yeah [1]** 14/1
**Yep [2]** 20/21 33/20
**yes [18]** 5/20 6/19 7/1 8/9 18/19 19/2 20/1 20/11 20/15 21/8 21/11 22/9 22/12 24/4 32/16 33/1 33/17 35/2
**yet [1]** 8/16
**York [2]** 1/16 2/8
**you'll [5]** 7/22 25/4 25/4 32/1 34/24
**yours [1]** 34/19
**yourselves [1]** 34/25
**YouTube [1]** 29/23